1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  KIANDRA HOLMAN, | Case No.  1:20-cv-01603-NONE-SAB |
| 12       Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING |
| 13    v. | DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION, GRANTING |
| 14  BATH & BODY WORKS, LLC, et al., | DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS, AND GRANTING |
| 15       Defendants. | DEFENDANTS' MOTION TO DISMISS ACTION |
| 16 | |
| 17 | (ECF Nos. 9, 10, 11, 14, 16, 27, 30, 31) |
| 18 | OBJECTIONS DUE WITHIN FOURTEEN DAYS |
| 19 | |

20        Currently before the Court is Defendants Bath & Body Works, LLC's ("BBW"), Bath &

21 Body Works Direct, Inc.'s ("BBWD"), and L Brands, Inc.'s ("L Brands") (collectively the

22 "Defendants") motion to compel arbitration of Plaintiff Kiandra Holman's ("Plaintiff")

23 individual claims, to strike Plaintiff's class allegations, and to dismiss this action.  (ECF No. 9.)

24 The motion has been referred to a United States magistrate judge pursuant to 28 U.S.C. §

25 636(b)(1)(B) and Local Rule 302.  (ECF No. 27.)  In consideration of the moving, opposition,

26 and reply papers, the declarations and exhibits attached thereto, the supplemental briefing, and

27 the Court's file, the Court issues the following findings and recommendations recommending

28 that Defendants' motion be granted.

# I.

# BACKGROUND

Mai-Linh Strauch initially filed this suit against Defendants on April 20, 2020, in Tulare County Superior Court, alleging Defendants deprived her and class members of wages owed under California law, including overtime wages and minimum wages.  (ECF No. 1-2 at 3.)  After Ms. Strauch could no longer serve as class representative, Plaintiff Kiandra Holman joined the case as a substitute class representative.  (Opp'n 7.)  As the new class representative, Plaintiff Holman filed a first amended complaint in Tulare County Superior Court on October 8, 2020, alleging similar wage and hour violations as Ms. Strauch.  (Opp'n 7; ECF No. 1-2 at 21.)  Defendants BBWD and BBW were served on October 14 and 15, 2020, respectively.  (ECF No. 5 at ¶ 1.)  On November 12, 2020, Defendants filed an answer in the state action.  (Id.)[1]  On November 13, 2020, Defendants removed this action to the Eastern District of California.  (ECF No. 1.)  An amended notice of removal was filed on the same date, which was again re-filed on November 24, 2020, at the request of the Clerk's office.  (ECF Nos. 5, 6, 7.)

On December 10, 2020, Defendants filed the instant motion to compel arbitration of Plaintiff's individual claims, to strike Plaintiff's class allegations, and to dismiss this action in its entirety.  (ECF No. 9.)  On December 23, 2020, Plaintiff filed an opposition brief.  (ECF No. 14.)  On December 31, 2020, Defendants filed a reply brief.  (ECF No. 16.)  On October 15, 2021, the matter was referred to the undersigned for the preparation of findings and recommendations or other appropriate action.  (ECF No. 27.)  On October 19, 2021, the Court set the motion for hearing on November 17, 2021, and ordered the parties to file supplemental briefing.  (ECF No. 28.)  On October 29, 2021, Defendants filed a supplemental brief.  (ECF No. 30.)  On November 5, 2021, Plaintiff filed a supplemental brief.  (ECF No. 31.)  On November 16, 2021, the Court vacated the hearing on this motion, finding the matter suitable for decision without oral argument pursuant to Local Rule 230(g).  (ECF No. 32.)

---

[1]  While Plaintiff's opposition states generally that the "Defendants" were served with process on October 14, 2020, citing docket entry no. 5, the docket entry states that Defendant L Brands had not been served.  (ECF No. 5 at 2.)  The opposition and notice of removal both generally state that "Defendants" filed an answer on November 12, 2020.  (Id.)  The removal documents contain an answer file on November 12, 2020, joined by the three Defendants.  (ECF No. 1-3 at 1.)

**II.**

**LEGAL STANDARD**

In 1925 the Federal Arbitration Act ("FAA") was enacted in response to judicial hostility to arbitration agreements.  AT&T Mobility LLC v. Concepcion (Concepcion), 563 U.S. 333, 339 (2011).  The primary provision of the FAA provides that a contract which evidences an intent to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in law for the revocation of any contract."  Concepcion, 563 U.S. at 339 (quoting 9 U.S.C. § 2).  The Supreme Court has found that "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary[,]" and the effect is to create a body of federal substantive law of arbitrability.  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).  The FAA places arbitration agreements on an equal footing with other contracts and requires the court to enforce such an agreement according to its terms.  Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).  "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

The court's role under the FAA in deciding whether a dispute is arbitrable, is "limited to determining (1) whether a valid agreement to arbitrate exists; and if it does (2) whether the agreement encompasses the dispute at issue."  Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000).  If the party seeking to compel arbitration establishes these two factors then the court must compel arbitration.  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").  "To determine whether the parties formed an agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts."  Int'l Bhd. of Teamsters v. NASA Servs., Inc., 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

1
2

### III.

### DISCUSSION

3   Defendants move to compel arbitration in this matter under an arbitration agreement
4   proffered to have been signed electronically by Plaintiff on October 6, 2019.  (Decl. Elizabeth
5   Paczak Supp. Defs.' Mot. Arbitrate ("Paczak Decl.") ¶ 12, ECF No. 10, Ex. C, Arbitration
6   Agreement (the "Agreement"), ECF No. 10-3 at 1-3.)

7   **A.**      **The Court finds Sufficient Meet and Confer**

8   Plaintiff suggests Defendants did not engage in adequate meet and confer prior to the
9   filing of this motion.  (See Decl. William H. Hogg Supp. Opp'n ("Hogg Decl.") ¶ 15, ECF No.
10  14-2 at 1.)  The Court finds Defendants have sufficiently demonstrated meaningful meet and
11  confer concerning the subject matter of this motion.  (See ECF No. 9 at 2-3; Defs.' Reply Supp.
12  Mot. Compel Arbitrate ("Reply") 5, ECF No. 16.)

13  **B.**      **Plaintiff's Framing of the Day of Signing the Arbitration Agreement**

14  As part of the orientation process, Plaintiff states she was required to attend an all-day
15  orientation session at the Bath & Body Works store on Sunday, October 6, 2019.  (Pl.'s Opp'n
16  Mot. Arbitrate ("Opp'n") 6; Decl. Kiandra Holman Supp. Opp'n Mot. Arbitrate ("Holman
17  Decl.") ¶ 3, ECF No. 14-1 at 1.)  Plaintiff proffers that during the eight-hour Sunday shift,
18  Defendants never explained what arbitration was, nor told Plaintiff she would be required to sign
19  an arbitration agreement during the orientation presentations.  (Opp'n 6; Holman Decl. ¶ 4.)

20  Plaintiff alleges that after working a full eight hour orientation session "on a Sunday,
21  Plaintiff was forced to sit at a computer in the back room of the store and 'click and sign'
22  through all of her on-boarding forms before she was allowed to leave for the day."  (Opp'n 6;
23  Holman Decl. ¶ 5.)  "Because it was the end of the day, Plaintiff was generally rushed through
24  this signature process; Plaintiff was told to 'just click and sign' everything and that all the
25  documents were standard acknowledgement forms."  (Id.)  Plaintiff proffers that: Defendants
26  "explained to Plaintiff that the forms were simply meant to acknowledge she attended
27  orientation," that Plaintiff does not remember seeing or signing an arbitration agreement, and
28  that she was not informed what arbitration was or what signing would mean about her legal

1   rights to bring a lawsuit against Defendants.  (Opp'n 6-7.)  Plaintiff further alleges she was not

2   provided a full opportunity to read the document because the software automatically took her to

3   the signature line, and she was rushed through the process as it was near closing time on a

4   Sunday night.  (Opp'n 7.)  Plaintiff submits that because she was not aware the arbitration

5   agreement was inserted into her on-boarding documents, she had no reason to further inquire into

6   what arbitration was or whether Defendants were including such document.  (Opp'n 7.)

7         Defendants respond that while the circumstances are not germane to the issues, as to

8   Plaintiff's claim that she worked a full eight hours before signing the Agreement at the end of

9   her shift, BBW's records establish that she only worked three hours and one minute on that day,

10   and executed the onboarding documents at the beginning of her shift.  (Reply 7 n.2; Elizabeth

11   Paczak Reply Decl. ("Reply Decl.") ¶ 5, ECF No. 17 ("According to BBW's records, including

12   Ms. Holman's time punch data, which are maintained in the regular and ordinary course of

13   business, Ms. Holman only worked three hours and one minute on October 6, 2019, which is the

14   day she completed her electronic onboarding paperwork. BBW's timestamp data also show that

15   she completed her electronic onboarding paperwork approximately 30 minutes after the start of

16   her training shift that day.")

17
     ### C.    Whether a Valid Agreement to Arbitrate Exists and Whether the Agreement
18             Encompasses the Dispute at Issue

19         Defendants submit that Plaintiff entered into a valid agreement to arbitrate; that the issues

20   in this lawsuit fall within the scope of the Agreement; and that all named Defendants may

21   enforce the Agreement against the Plaintiff.  (Mot. 4.)  Plaintiff submits that dismissal of the

22   class claims is improper arguing such claims are expressly outside the terms of the Agreement.

23   (Opp'n 5.)  Plaintiff also argues the Agreement is unconscionable and unenforceable because,

24   among other reasons: (1) it is silent on salient issues, such as whether Plaintiff will be forced to

25   incur arbitration costs, and what discovery provisions are available to Plaintiff; and (2) it

26   contains unenforceable terms, such as a waiver of Plaintiff's right to bring a claim under the

27   Private Attorney General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA").

28   ///

1           1.      <u>Legal Standards</u>

2           "To determine whether the parties formed an agreement to arbitrate, courts 'apply

3   ordinary state-law principles that govern the formation of contracts.' " <u>Int'l Bhd. of Teamsters v.</u>

4   <u>NASA Servs., Inc.</u>, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting <u>First Options of Chi., Inc. v.</u>

5   <u>Kaplan</u>, 514 U.S. 938, 944 (1995)).  "[C]ourts will not strain to create an ambiguity where none

6   exists[.]"  <u>Int'l Bhd. of Teamsters</u>, 957 F.3d at 1044. (citations omitted).  Any ambiguity in the

7   contract is to be construed against the party who caused the ambiguity.  <u>Penthouse Int'l, Ltd. v.</u>

8   <u>Barnes</u>, 792 F.2d 943, 948 (9th Cir. 1986).  The primary goal in interpreting contracts under

9   California law is "to give effect to the parties' mutual intent gathered from the entire document."

10  <u>Int'l Bhd. of Teamsters</u>, 957 F.3d at 1046.  A primary rule of interpretation of contracts is that

11  they "must be construed as a whole, that is, from their four corners, and the intention of the

12  parties is to be collected from the entire instrument and not detached portions thereof, it being

13  necessary to consider all of the parts to determine the meaning of any particular part as well as of

14  the whole."  <u>Ajax Magnolia One Corp. v. S. Cal. Edison Co.</u>, 167 Cal.App.2d 743, 748 (1959).

15  "Individual clauses and particular words must be considered in connection with the rest of the

16  agreement, and all of the writing and every word of it will, if possible, be given effect."  <u>Id.</u>

17          "It is a settled principle of law that 'arbitration is a matter of contract.' "  <u>Ingle v. Cir.</u>

18  <u>City Stores, Inc.</u>, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting <u>United Steelworkers of America</u>

19  <u>v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 582 (1960)).  Courts must "place arbitration

20  agreements on equal footing with other contracts."  <u>Ingle</u>, 328 F.3d at 1170 (quoting <u>EEOC v.</u>

21  <u>Waffle House, Inc.</u>, 534 U.S. 279, 293 (2002)).  Thus, arbitration agreements are subject to all

22  defenses that generally apply to contracts, and "[t]o evaluate the validity of an arbitration

23  agreement, federal courts 'should apply ordinary state-law principles that govern the formation

24  of contracts.' "  <u>Ingle</u>, 328 F.3d at 1170 (quoting <u>First Options of Chicago, Inc. v. Kaplan</u>, 514

25  U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); <u>see also</u> <u>Wagner v. Stratton Oakmont,</u>

26  <u>Inc.</u>, 83 F.3d 1046, 1049 (9th Cir. 1996) ("We interpret the contract by applying general state-

27  law principles of contract interpretation, while giving due regard to the federal policy in favor of

28  arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.").

1    The essential elements of a contract under California law are: "(1) parties capable of

2  contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration."

3  Marshall & Co. v. Weisel, 242 Cal. App. 2d 191, 196 (Ct. App. 1966); Cal. Civ. Code § 1550

4  (same); see also Totten v. Kellogg Brown & Root, LLC, 152 F. Supp. 3d 1243, 1250 (C.D. Cal.

5  2016) ("Under California law, a contract is valid if there is mutual assent between the parties and

6  valid consideration.") (citing Div. of Labor Law Enforcement v. Transpacific Transp. Co., 69

7  Cal. App. 3d 268, 275 (1977)).

8    2.    A Valid Arbitration Agreement was Entered Into by the Parties

9    Defendants submit that Plaintiff assented to the Arbitration Agreement by signing the

10  agreement electronically.  (See Mot. 10; Paczak Decl. ¶¶ 7-12, Exs. A, B, C, ECF Nos. 10-1, 10-

11  2, 10-3).   When signing, Plaintiff affirmed and warranted that she read the agreement,

12  understood it, and agreed to be bound by it.  (Agreement at 3.)  Plaintiff does not appear to

13  suggest in a direct argument that an electronic signature in and of itself cannot be a valid

14  acceptance of an arbitration agreement.   However, in arguing procedural and substantive

15  unconscionability, Plaintiff does state that because the process was electronic, she did not have to

16  review or read the provisions.  (Holman Decl. ¶¶ 6-7.)  The Court finds Defendants have

17  sufficiently demonstrated the Agreement was signed electronically by Plaintiff on October 6,

18  2019.

19    The Court finds the electronic signature itself is not an obstacle to finding assent and a

20  valid and enforceable arbitration agreement.  California has enacted the Uniform Electronic

21  Transaction Act which became effective on January 1, 2000.  Cal. Civ. Code § 1633.1 et seq.

22  The Act provides that a "signature may not be denied legal effect or enforceability solely

23  because it is in electronic form," and specifies that "[a] contract may not be denied legal effect or

24  enforceability solely because an electronic record was used in its formation."  Cal. Civ. Code §

25  1633.7(a)-(b); see also Mikhak v. Univ. of Phoenix, No. C16-00901 CRB, 2016 WL 3401763, at

26  *6 (N.D. Cal. June 21, 2016) ("Electronic signatures and clicking 'Accept' are valid means of

27  expressing assent to a contract.") (citing Cal. Civ. Code § 1633.7).  "To satisfy the requirement

28  of authenticating or identifying an item of evidence, the proponent must produce evidence

1  sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid.

2  901(a).  Authentication can occur by considering "[t]he appearance, contents, substance, internal

3  patterns, or other distinctive characteristics of the item, taken together with all the

4  circumstances."  Fed. R. Evid. 901(b)(4).  Courts have found the declaration of human resource

5  employees sufficient to authenticate electronic signatures.  See Nanavati v. Adecco USA, Inc.,

6  99 F.Supp.3d 1072, 1076 (N.D. Cal. 2014); Langston v. 20/20 Companies, Inc., No. EDCV 14-

7  1360 JGB (SPx), 2014 WL 5335734, at *5-6 (C.D. Cal. October 7, 2014); Jones-Mixon v.

8  Bloomingdale's, Inc., No. 14-cv-01103-JCS, 2014 WL 2736020, at *4 (N.D. Cal. June 11,

9  2014).  The records submitted by Defendants demonstrate Plaintiff electronically signed the

10  Agreement on October 6, 2019.  (Paczak Decl. ¶¶ 9-12, Exs. A, B, C.)

11      While the individual contract signed electronically by Plaintiff was not signed by

12  Defendant BBW, Defendants submit that the existence of the Agreement, and the effort to

13  enforce it through this instant motion, establishes that BBW has agreed to the terms.  The Court

14  agrees the lack of countersigning the individual contract is not an obstacle to finding a valid and

15  enforceable agreement.  "[A]n arbitration agreement can be specifically enforced against the

16  signing party regardless of whether the party seeking enforcement has also signed, provided that

17  the party seeking enforcement has performed or offered to do so."  Serafin v. Balco Properties

18  Ltd., LLC, 235 Cal. App. 4th 165, 177 (2015) ("In this case, not only was the agreement

19  authored by Balco, and printed on Bay Alarm's letterhead, but Balco's later conduct evinces an

20  intent to be bound by the arbitration agreement when it invoked the arbitration process to recover

21  the $10,798.08 overpayment allegedly made to Serafin, and when it filed the motion to stay

22  Serafin's employment litigation and to compel arbitration.") (citing Cal. Civ. Code § 3388).

23      Defendants also argue Plaintiff implicitly assented to the agreement under California law

24  because an at-will employee's continued employment after notification of an arbitration

25  agreement, is an agreement to be bound by the arbitration program, and here, after

26  acknowledging the Agreement in writing, agreeing to be bound, and declining to opt-out despite

27  the express ability to opt-out, Plaintiff continued working for the company.  See Craig v. Brown

28  & Root, Inc., 84 Cal. App. 4th 416, 420 (2000) ("This means that a party's acceptance of an

8

1   agreement to arbitrate may be express . . . or implied-in-fact where, as here, the employee's
2   continued employment constitutes her acceptance of an agreement proposed by her employer.").
3   The Court does not find consideration of this alternative argument necessary as the Court finds
4   the electronic acceptance and assent was valid, however, the circumstances here do provide
5   additional support for such acceptance.  See Craig, 84 Cal. App. 4th at 422 ("Accordingly, there
6   is substantial evidence (1) that the memorandum and brochure were received by Craig in 1993
7   and again in 1994; (2) that she continued to work for Brown & Root until 1997; and (3) that she
8   thereby agreed to be bound by the terms of the Dispute Resolution Program, including its
9   provision for binding arbitration.").

10          Defendants also submit valid consideration supports the Agreement as BBW and Plaintiff
11  mutually exchanged promises to arbitrate under the Agreement.   Specifically, the Agreement
12  provides that: "YOU and Employer agree that . . . any dispute between YOU and Employer
13  (including agents of Employer and its subsidiaries or related companies) . . . shall be settled by
14  binding arbitration."  (Agreement at 1.)   The Agreement expressly describes the exchange of
15  consideration: "In exchange for the offer of employment extended to YOU, and/or YOUR
16  continued employment with [BBW], along with the mutual promises in this Agreement, YOU
17  and [BBW] agree . . ."  (Id.)  The Court finds valid consideration supports the entering into the
18  Agreement.  Plaintiff accepted BBW's offer in exchange for her agreement to arbitrate, and
19  Plaintiff continued to work for BBW afterward.  See Asfaw v. Lowe's HIW, Inc., No. LA CV14-
20  00697 JAK, 2014 WL 1928612, at *3 (C.D. Cal. May 13, 2014) ("However, it is undisputed that,
21  in exchange for agreeing to arbitrate disputes, Plaintiff either accepted Defendant's offer of
22  employment or continued working for Defendant [and] [c]ontinued employment constitutes
23  consideration for an agreement to arbitrate.").  Further, the employer's "promise to be bound by
24  the arbitration process itself serves as adequate consideration" to support an arbitration
25  agreement.   Cir. City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) (citing
26  Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83 (2000)).

27          a.      **All Defendants are Covered by the Arbitration Agreement**

28          Defendants submit that each individual Defendant is entitled to enforce the Agreement.

9

1  Defendant BBW may enforce the Agreement as it is a direct party to the Agreement.  (Mot. 12.)

2  Additionally, Defendants argue that BBWD and L Brands may each enforce the Agreement

3  under the agency exception.

4        Generally, only parties to an arbitration agreement may enforce it, though "[t]he agency

5  exception is another exception to the general rule that only a party to an arbitration agreement

6  may enforce it."  Garcia v. Pexco, LLC, 11 Cal. App. 5th 782, 788 (2017) ("The exception

7  applies, and a defendant may enforce the arbitration agreement, when a plaintiff alleges a

8  defendant acted as an agent of a party to an arbitration agreement . . . [and] [h]ere, the operative

9  complaint alleged Real Time and Pexco were acting as agents of one another and every cause of

10  action alleged identical claims against All Defendants without any distinction.") (citations and

11  internal quotation marks omitted).   Here, Plaintiff's operative complaint alleges that all

12  Defendants were agents of each other and "jointly exercised control over Plaintiff."  (First

13  Amended Complaint ("FAC") ¶¶ 13-14, ECF No. 1-1 at 24.)  Specifically, the complaint alleges

14  that "Plaintiff is informed and believes that each and every one of the acts and omissions alleged

15  herein were performed by, and/or attributable to, Defendants, each acting as agents and/or

16  employees, and/or under the direction and control of each of the other, and that said acts and

17  failures to act were within the course and scope of said agency, employment and/or direction and

18  control."  (ECF No. 1-1 at 24.)  It also alleges "Plaintiff is informed, believes, and thereon

19  alleges that Defendants jointly exercised control over Plaintiff and Class members with respect

20  to their employment."  (Id.)

21        The Court finds the agency exception is applicable.  See Garcia, 11 Cal. App. 5th at 788;

22  Ortiz v. Volt Mgmt. Corp., No. 16-CV-07096-YGR, 2017 WL 2404977, at *2 (N.D. Cal. June 2,

23  2017) ("Accordingly, as in Garcia, it is appropriate to allow the nonsignatory defendant to

24  compel plaintiff into arbitration because his claims were 'intimately founded in and intertwined

25  with his employment relationship' with the signatory staffing agency . . . [and] [a]s there, the

26  plaintiff here referred 'to both employers collectively as defendants without any distinction.").

27  Even notwithstanding the agency exception, Defendants argue that the Plaintiff expressly agreed

28  to arbitrate any disputes with "agents" of BBW, as well as "related companies."  (Agreement,

1    ECF No. 10-3 at 1.)   The Agreement expressly provides that "any dispute between YOU and
2    Employer (including agents of Employer and its subsidiaries or related companies) that arises, or
3    has arisen, out of YOUR employment or the termination."   (Id.)   Given the language in the
4    complaint noted above, and the fact that L Brands is the ultimate parent company of BBW and
5    BBWD is a related L Brands subsidiary (Paczak Decl. ¶ 1), the Court finds the Agreement to be
6    applicable to each Defendant in this action.   Additionally, it does not appear that Plaintiff has
7    mounted an opposition on this precise point.

8          Finally, as additional support for the position, Defendants argue that BBWD and L
9    Brands may enforce the Agreement under equitable estoppel principles given it would prevent a
10   signatory from an arbitration agreement from evading arbitration "by suing nonsignatory
11   defendants for 'claims that are based on the same facts and are inherently inseparable from
12   arbitrable claims against signatory defendants.' "   Hughes v. S.A.W. Ent., Ltd., No. 16-CV-
13   03371-LB, 2019 WL 2060769, at *25 (N.D. Cal. May 9, 2019) ("[A] nonsignatory may invoke
14   equitable estoppel when the signatory alleges substantially interdependent and concerted
15   misconduct by the nonsignatory and another signatory and 'the allegations of interdependent
16   misconduct are founded in or intimately connected with the obligations of the underlying
17   agreement.") (citations and internal quotations omitted); Garcia, 11 Cal. App. 5th at 787 (non-
18   signatory could enforce arbitration agreement where all of the plaintiff's claims were "rooted in"
19   her employment relationship with signatory employer).   In this regard, Defendants argue that as
20   in Garcia, Plaintiff cannot "link" BBWD and L Brands to BBW to hold them "liable for alleged
21   wage and hour claims, while at the same time arguing the arbitration provision only applies" to
22   BBW.   Garcia, 11 Cal. App. 5th at 788 ("Because the arbitration agreement controls Garcia's
23   employment, he is equitably estopped from refusing to arbitrate his claims with Pexco.").   Again,
24   Plaintiff does not appear to mount any defense to these arguments and does not address these
25   cases.  The Court finds each Defendant may enforce the Agreement.

26         The Court finds Defendants have adequately demonstrated the parties entered into the
27   Agreement under the law of contract formation in California.   Having found preliminary
28   considerations concerning the parties' assent to enter into a valid arbitration agreement weigh

1   toward finding a valid agreement to arbitrate, the Court now turns to more specific arguments

2   concerning the validity, scope, and enforceability of the Agreement.

3          3.    <u>The Agreement Covers the Claims in this Action</u>

4         Aside from arguing the Agreement is unconscionable as a whole, Plaintiff does not

5   directly argue the Agreement would not cover Plaintiff's individual claims in this action.  The

6   Court finds the language of the Agreement covers the Plaintiff's causes of action stemming from

7   her employment with Defendants.  Plaintiff brings causes of action for: (1) failure to pay for all

8   hours worked under California Labor Code § 204; (2) failure to pay overtime wages under

9   California Labor Code § 510; (3) failure to pay minimum wage and liquidated damages under

10  California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1; (4) failure to provide

11  timely and accurate itemized wage statements under California Labor Code §§ 201-203; and (5)

12  unlawful business practices under California Business and Professions Code § 17200.  (ECF No.

13  1-1 at 21.)  Under the subheading "**<u>Coverage of this Agreement</u>**," the Agreement provides that:

14  "This Agreement is intended to be broad and to cover, to the extent permitted by law, all disputes

15  between YOU and Employer that arise, or have arisen, out of your employment or termination of

16  employment."  (Agreement at 1.)  The Agreement specifically covers claims brought under the

17  "California Labor Code" and the "California Business and Professions Code § 17200 et seq."

18  (<u>Id.</u>)  The Agreement expressly provides that "except as explicitly provided herein, any dispute

19  between YOU and Employer (including agents of Employer and its subsidiaries or related

20  companies) that arises, or has arisen, out of YOUR employment or the termination of YOUR

21  employment shall be settled by binding arbitration."  (<u>Id.</u>)

22        Plaintiff argues that the motion to strike and dismiss must be denied as to the class claims

23  because such claims are specifically excluded from arbitration and must proceed in a court of

24  law.  Plaintiff argues the Agreement only prohibits bringing a class action *in arbitration*, and

25  there is no provision or language that requires Plaintiff to waive her right to bring a class action

26  in a non-arbitral forum such as a court of law.  In fact, Plaintiff emphasizes the Agreement

27  expressly contemplates that if a court finds the class waiver unenforceable in any respect,

28  Plaintiff may only bring a class action in a court, and thus such class action claims are expressly

1    outside the scope of the arbitration of this matter, and may only proceed in court.

2         The class waiver provision provides as follows:

3              **Class and Representative Action Waivers**
                      **CLASS ACTION WAIVER.** To the extent permissible by
4              law, there shall be no right or authority for any dispute to be
               arbitrated as a class action or collective action ("Class Action
5              Waiver"). **THIS MEANS THAT, EXCEPT AS EXPLICITLY
               PROVIDED HEREIN, ALL DISPUTES BETWEEN YOU
6              AND EMPLOYER THAT ARISE, OR HAVE ARISEN, OUT
               OF YOUR EMPLOYMENT OR THE TERMINATION OF
7              YOUR   EMPLOYMENT   SHALL   PROCEED   IN
               ARBITRATION SOLELY ON AN INDIVIDUAL BASIS,
8              AND   THAT   THE   ARBITRATOR'S   AUTHORITY   TO
               RESOLVE ANY DISPUTE AND TO MAKE WRITTEN
9              AWARDS WILL BE LIMITED TO YOUR INDIVIDUAL
               CLAIMS.**

10

11   (Agreement at 2.)

12        Plaintiff argues the presumption of arbitration does not apply where the terms are not

13   ambiguous, arguing the Agreement unambiguously does not waive class claims in a court of law.

14   Specifically, the Supreme Court noted that the cases invoking the federal policy favoring

15   arbitration recognized that "except where 'the parties clearly and unmistakably provide

16   otherwise,' it is 'the court's duty to interpret the agreement and to determine whether the parties

17   intended to arbitrate grievances concerning' a particular matter."  Granite Rock Co. v. Int'l Bhd.

18   of Teamsters, 561 U.S. 287, 301 (2010) (citations omitted).  This duty of the courts is discharged

19   "by: (1) applying the presumption of arbitrability only where a validly formed and enforceable

20   arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering

21   to the presumption and ordering arbitration only where the presumption is not rebutted."  Id.  The

22   Supreme Court went on to explain:

23              Local is thus wrong to suggest that the presumption of arbitrability
               we sometimes apply takes courts outside our settled framework for
24             deciding arbitrability. The presumption simply assists in resolving
               arbitrability disputes within that framework. Confining the
25             presumption to this role reflects its foundation in "the federal
               policy favoring arbitration." As we have explained, this "policy" is
26             merely an acknowledgment of the FAA's commitment to "overrule
               the judiciary's longstanding refusal to enforce agreements to
27             arbitrate and to place such agreements upon the same footing as
               other contracts." *Volt*, 489 U.S., at 478, 109 S.Ct. 1248 (internal
28             quotation marks and citation omitted). Accordingly, we have never

                                          13

1
2
3
4
5
6
7
8
9
10

> held that this policy overrides the principle that a court may submit to arbitration "only those disputes ... that the parties have agreed to submit." *First Options*, 514 U.S., at 943, 115 S.Ct. 1920; see also *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties"); *AT & T Technologies*, 475 U.S., at 650–651, 106 S.Ct. 1415 (applying the same rule to the "presumption of arbitrability for labor disputes"). Nor have we held that courts may use policy considerations as a substitute for party agreement. See, *e.g., id.*, at 648–651, 106 S.Ct. 1415; *Volt, supra*, at 478, 109 S.Ct. 1248. We have applied the presumption favoring arbitration, in FAA and in labor cases, only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute.

11   Granite Rock Co., 561 U.S. at 302–03.  Thus, the Court will proceed to engage in its duty to

12   determine whether the parties agreed to arbitrate the claims underlying this action, and will apply

13   a presumption of arbitration if the Agreement is ambiguous as to whether it covers the dispute at

14   hand.

15        Plaintiff argues that each cause of action in the FAC is asserted on behalf of a class,

16   cannot be compelled to arbitration, and thus are not barred from this Court.   (Opp'n 10.)

17   Plaintiff contends the Agreement clearly excludes class action and representative claims from

18   arbitration, as the "coverage" section provides that only individualized claims are to be

19   arbitrated, and when the Agreement discusses class and representative actions, it only excludes

20   such types of claims from arbitration, not from adjudication in a court of law.  (Opp'n 10-11.)

21   Plaintiff also emphasizes the Agreement provides that if a court finds the class waiver

22   unenforceable, the unenforceable provision is severable from the Agreement, and the class action

23   claims may only be litigated in a court.  (Agreement, ECF No. 10-3 at 2-3.)  Plaintiff submits

24   that the Agreement's waiver only prohibits an arbitrator, not a court, from resolving a class

25   action, and says nothing about waiving such claims generally, or prohibiting Plaintiff from

26   pursuing such claims in a court of law.

27        Defendants argue that terms of the Agreement specify that arbitration provides the

28   exclusive forum for the resolution of Plaintiff's disputes with the Defendants, and that she may

1   only pursue individual claims.  (Defs.' Reply Supp. Mot. Compel Arbitrate ("Reply") 13, ECF

2   No. 16.)  The Court agrees with the Defendants' proffered construction of the Agreement and the

3   intent of the contracting parties to settle all employment disputes through individual arbitration.

4          While ambiguity is to be construed against the party who caused the ambiguity, and there

5   is some merit to the argument the individual class waiver provision taken in isolation *could* have

6   been more clear, the Court does not find the Agreement ambiguous.  Where language "*could* be

7   clearer," that does not make it ambiguous.  <u>Alameda Cty. Flood Control & Water Conservation</u>

8   <u>Dist. v. Dep't of Water Res.</u>, 213 Cal. App. 4th 1163, 1179 (2013) ("[A]n ambiguity cannot be

9   created by parsing words outside their context."); <u>see also</u> <u>Int'l Bhd. of Teamsters</u>, 957 F.3d at

10  1044 ("[C]ourts will not strain to create an ambiguity where none exists."); <u>Ajax Magnolia</u>, 167

11  Cal.App.2d at 748 (contracts "must be construed as a whole, that is, from their four corners, and

12  the intention of the parties is to be collected from the entire instrument and not detached portions

13  thereof, it being necessary to consider all of the parts to determine the meaning of any particular

14  part as well as of the whole.").  The Court finds the Agreement as a whole clearly demonstrates

15  the parties' intent to only allow claims arising from the employment to be settled by individual

16  arbitration, and that there was no right to bring a class or representative action in arbitration, to

17  the extent permissible by law.  <u>Int'l Bhd. of Teamsters</u>, 957 F.3d at 1046 (the primary goal in

18  interpreting contracts under California law is "to give effect to the parties' mutual intent gathered

19  from the entire document."); <u>Ajax Magnolia</u>, 167 Cal.App.2d at 748 ("Individual clauses and

20  particular words must be considered in connection with the rest of the agreement, and all of the

21  writing and every word of it will, if possible, be given effect.").

22         Again, the coverage of the Agreement "is intended to be broad and to cover, to the extent

23  permitted by law, all disputes between YOU and Employer that arise, or have arisen, out of your

24  employment or termination of employment."  (Agreement at 1.)  The Agreement expressly

25  provides that "except as explicitly provided herein, any dispute between YOU and Employer

26  (including agents of Employer and its subsidiaries or related companies) that arises, or has

27  arisen, out of YOUR employment or the termination of YOUR employment shall be settled by

28  binding arbitration."  (<u>Id.</u>)  The Agreement states "**EXCEPT AS EXPLICITLY PROVIDED**

HEREIN, THERE WILL BE NO COURT OR JURY TRIAL OF DISPUTES BETWEEN YOU AND EMPLOYER WHICH ARISE, OR HAVE ARISEN, OUT OF YOUR EMPLOYMENT OR THE TERMINATION OF YOUR EMPLOYMENT.”   (Id.)   In addition, the class action waiver explains that: “EXCEPT AS PROVIDED HEREIN, ALL DISPUTES BETWEEN YOU AND EMPLOYER THAT ARISE, OR HAVE ARISEN, OUT OF YOUR EMPLOYMENT OR THE TERMINATION OF YOUR EMPLOYMENT SHALL PROCEED IN ARBITRATION SOLELY ON AN INDIVIDUAL BASIS.” (Agreement at 2.)   Accordingly, based on the language of the Agreement, the Court disagrees with Plaintiff’s argument that the Agreement says nothing about waiving such claims generally, or prohibiting Plaintiff from pursuing such claims in a court of law.  See Int’l Bhd. of Teamsters, 957 F.3d at 1046; Ajax Magnolia, 167 Cal.App.2d at 748.

The Court now considers Plaintiff’s other specific arguments and caselaw cited regarding the scope of the agreement over class claims.  Plaintiff contends this case is similar to Irving v. Solarcity Corp., arguing that like there, the Agreement here excludes class actions from being pursued in arbitration, but otherwise did not clearly and unmistakably require the plaintiff to waive class action claims altogether:

> Paragraph 12A says that claims under private attorney general representative action (such as PAGA) are completely exempt from the entirety of the Agreement. It says that representative action may be maintained in a court of law. Thus it explicitly preserves the right to litigate a representative action in court. Then 12A adds the twist that individual claims are subject to arbitration but the representative action/claim is not. Given that the law provides that there is no individual claim under PAGA, then application of 12A is that the PAGA representative action is completely outside of the Agreement, and can proceed in a court of law.
>
> Paragraph 12D says that there will be no right “for any dispute to be brought, heard or arbitrated" as a class action or representative action on behalf of others or on behalf of the public.  What does “brought, heard or arbitrated” mean in the context of the Agreement? If it only applies in the context of *arbitration,* and means brought by arbitration petition, heard in arbitration, or adjudicated in arbitration, then it would be consistent with Paragraph 12A, which says that representative claims are to be brought and litigated in the trial court and not in arbitration. If so, then all of Plaintiff’s class claims and representative claims are not subject to arbitration and are subject to litigation in the courts.

1   Irving v. Solarcity Corp., 2014 Cal. Super. LEXIS 13542, *15-16 (unpublished).  The Irving

2   court found that "applying these rules of interpretation to the two seemingly inconsistent

3   provisions, either of the two above-stated interpretations yields the same result: class action and

4   representative action claims are not subject to the arbitration provisions of the Agreement, and

5   can proceed in the courts."  Id. at *17.  The Irving court alternatively found that "under the

6   circumstances of this confusing, imprecise, and inconsistent language in the Agreement drafted

7   by Defendant, the Defendant ha[d] failed to meet its burden of demonstrating that Plaintiff

8   waived her rights to proceed with a class action in court."  Id. at *17-18.

9          Defendants respond that Irving is a non-published superior court opinion, did not involve

10   Article III standing or Rule 23 requirements, and is thus not persuasive.  The Court agrees, as

11   explained further below.  Additionally, while Defendants did not directly argue that the language

12   in the Agreement here is less inconsistent or imprecise than that in Irving, the Court found above

13   that that in consideration of all of the language in the Agreement, the parties intended the

14   Agreement to waive such class claims (and representative actions to the extent allowed under the

15   law).  The Court finds the Agreement here to be distinguishable from that in the non-published

16   opinion of Irving, where the agreement's paragraph 12A expressly provided that claims under

17   private attorney general representative action (such as PAGA) were completely exempt from the

18   entirety of the Agreement.  See Irving, 2014 Cal. Super. LEXIS 13542, *15-16.

19          In addition to Irving, Plaintiff also cites the Third Circuit opinion in Novosad, and the

20   Western District of Texas case of Passmore.  In Novosad, the court of appeals asked whether "an

21   arbitration clause stating that it 'covers only claims by individuals and does not cover class or

22   collective actions' nonetheless require that a putative class and collective action for overtime pay

23   be sent to arbitration?"  Novosad v. Broomall Operating Co. LP, 684 F. App'x 165, 166 (3d Cir.

24   2017).  Specifically, the clause made arbitration "the only means of resolving employment

25   related disputes . . . however, the clause also state[d] that it 'covers only claims by individuals

26   and does not cover class or collective actions' [and] [t]he District Court read this latter sentence

27   as unambiguously carving out class and collective actions from mandatory arbitration."  Id.  The

28   Third Circuit upheld the district court decision finding "the arbitration clause's plain language

17

1   excludes class and collective actions from mandatory arbitration," that the "contrary argument

2   renders that provision of the clause superfluous . . . [and the] clause . . . unmistakably provides

3   that plaintiffs' class and collective actions need not be subject to arbitration." Id.

4          In Passmore, the scope of arbitration covered "only claims by individuals and does not

5   cover class or collective actions." Passmore v. SSC Kerrville Hilltop Vill. Operating Co. LLC ,

6   No. SA-18-CV-00782-FB, 2019 U.S. Dist. LEXIS 1841, at *11 (W.D. Tex. Jan. 4, 2019).

7   Because the plaintiffs brought a collective action under the FLSA, the court found the collective

8   action was not covered by the arbitration agreement, and denied the motion to compel

9   arbitration. Id. The court found the language identical to that in Novosad:

> Despite the Disputed Sentence's unambiguous language,
> Defendants propose an alternative construction: that it is class and
> collective action waiver. According to Defendants, the phrase
> "does not cover class or collective actions" should be interpreted
> not to exclude such actions from arbitration, but to waive an
> employee's right to participate in such actions altogether. (Doc. 11,
> Ex. A at ¶ 4.) Defendants' interpretation of this unambiguous
> sentence is creative but tortured. The only reasonable interpretation
> of the agreement is that class and collective actions
> are *excluded* from arbitration; and there is nothing in that
> sentence—or anywhere else in the agreement—that could be
> understood as a valid waiver of the signatory employee's right to
> assert claims on a class or collective basis. The Disputed Sentence
> does not contain the words "waive" or "prohibit" or any of their
> derivatives or synonyms.
>
> Defendants' proposed construction of the Disputed Sentence is less
> convincing when its language is considered in the context of the
> sentences that precede it:
>
>> This mutual agreement to arbitrate claims means that both
>> you and the Company are bound to use the EDR Program
>> as the only means of resolving employment-related
>> disputes and to ***forego any right either may have to a jury
>> trial*** on issues covered by the EDR Program. However, ***no
>> remedies that otherwise would be available to you*** or the
>> company ***in a court of law will be forfeited by virtue of the
>> agreement to use and be bound by the EDR Program***.
>> This Program covers only claims by individuals and does
>> not cover class or collective actions.
>
> (Doc. 11, Ex. A at ¶ 4 (emphasis added).) The highlighted
> language constitutes unambiguous waiver language regarding the
> employee's  right to a jury trial on covered issues and follows that
> explicit waiver language with an equally clear clarification that the
> employee is *not* waiving any other rights he or she would
> otherwise have in a court of law, which would include a right to

18

proceed collectively. The Disputed Sentence cannot be construed as a collective or class action waiver in this context without reading waiver language into the parties' agreement that simply does not exist, which is even more troubling when considered in light of the drafting employer's obvious ability to be explicit about waiving employee rights. The Disputed Sentence is the *only* mention of class or collective actions in any of the documents governing the EDR Program. Thus, it is not as if that final sentence could be read in conjunction with some other language regarding a plausible waiver of class and collective action rights.

Passmore, 2019 U.S. Dist. LEXIS 1841, at *13-16.  Here, Plaintiff argues the Agreement only requires her to waiver her ability to arbitrate class and/or representative claims, but does not require Plaintiff to forego bringing such class claims in court.  (Opp'n 13.)  Because class claims are excluded from arbitration entirely, Plaintiff argues the Agreement necessarily requires Plaintiff to bring such claims in a court of law because they are not covered by the Agreement.

The Court finds Novosad and Passmore to be distinguishable.  The arbitration agreements at issue therein expressly carved out class and collective actions from their coverage, and did not demonstrate or include language demonstrating the clear intent of the agreements as to such claims.  Here the Agreement can be contrasted as it states: "**THIS AGREEMENT MEANS THAT, EXCEPT AS EXPLICITLY PROVIDED HEREIN, THERE WILL BE NO COURT OR JURY TRIAL OF DISPUTES BETWEEN YOU AND EMPLOYER WHICH ARISE, OR HAVE ARISEN, OUT OF YOUR EMPLOYMENT OR THE TERMINATION OF YOUR EMPLOYMENT.**"  See Passmore, 2019 U.S. Dist. LEXIS 1841, at *13-16 (arbitration agreement states arbitration program "does not cover class or collective actions," "is the only means of resolving employment-related disputes," waives "*any right either may have to a jury trial* on issues covered by the EDR Program," states "*no remedies that otherwise would be available to you* or the company *in a court of law will be forfeited by virtue of the agreement to use and be bound by the EDR Program*," and that the program "covers only claims by individuals and does not cover class or collective actions.").  In Novosad, the court only asked whether the arbitration clause excluding class or collective actions should still require such claims to be sent to arbitration.  Novosad, 684 F. App'x at 166.  While the agreement in Novosad also contained a similar provision providing arbitration was "the only means of

1  resolving employment related disputes," the Court finds ample language in the Agreement here

2  to evince the parties' intent.

3       The Agreement here contains a separate provision waiving the right to bring or

4  participate in class and collective actions, and the Agreement states it is "intended to be broad

5  and to cover, to the extent permitted by law, all disputes between YOU and Employer that arise,

6  or have arisen, out of your employment or termination of employment."  (Agreement at 1.)

7  None of the express exceptions contained in the Agreement are applicable, namely: (1) worker's

8  compensation claims; (2) claims under the Employee Retirement Income Security Act of 1974

9  ("ERISA"), 29 U.S.C. § 1001, *et seq.*; and (3) claims for sexual assault.  (Agreement at 1.)  The

10  Agreement provides that the parties will arbitrate their disputes on an individual basis, stating

11  that: "To the extent permissible by law, there shall be no right or authority for any dispute to be

12  arbitrated as a class action or collective action," and that "**THIS MEANS THAT, EXCEPT AS**

13  **EXPLICITLY PROVIDED HEREIN, ALL DISPUTES BETWEEN YOU AND**

14  **EMPLOYER THAT ARISE, OR HAVE ARISEN, OUT OF YOUR EMPLOYMENT OR**

15  **THE TERMINATION OF YOUR EMPLOYMENT SHALL PROCEED IN**

16  **ARBITRATION SOLELY ON AN INDIVIDUAL BASIS**."  (Agreement at 2.)  Plaintiff

17  additionally expressly acknowledged she had read and understood the Agreement, and

18  affirmatively agreed to be bound by the terms.  (Id. ("**YOU ACKNOWLEDGE THAT YOU**

19  **HAVE READ AND UNDERSTAND THE ABOVE PROVISIONS AND VOLUNTARILY**

20  **AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT.**").)

21       Further, as for Plaintiff's argument that even if she must arbitrate her individual claims,

22  she may still prosecute a class action in court, the Court agrees with Defendants that such

23  position is untenable because Plaintiff would lack Article III standing as she would have no

24  "personal stake in the outcome of the controversy," and the Court could not redress her claimed

25  injuries because she had agreed to pursue her claims in an exclusively arbitral forum.[2]  See Baker

---

26  [2]  Additionally, Plaintiff submits that while Novosod and Passmore demonstrate that it would be appropriate to deny

27  Defendants' motion to compel in its entirety, to the extent the Court is inclined to compel Plaintiff's individual claims to arbitration, Plaintiff would seek leave to conduct limited discovery to locate an additional class representative who has opted-out of arbitration or otherwise was not required to sign an arbitration agreement.

28  (Opp'n at 14 n.5.)  The Court recommends denying such request.  See Sanford v. MemberWorks, Inc., 625 F.3d

1  v. Carr, 369 U.S. 186, 204 (1962) ("Have the appellants alleged such a personal stake in the

2  outcome of the controversy as to assure that concrete adverseness which sharpens the

3  presentation of issues upon which the court so largely depends for illumination of difficult

4  constitutional questions?"); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998)

5  ("And third, there must be redressability—a likelihood that the requested relief will redress the

6  alleged injury.").  Defendants also argue that Plaintiff could not satisfy the Federal Rule of Civil

7  Procedure 23's requirements for class certification because she could not satisfy the adequacy

8  and typicality requirements.  (Reply 13.)

9        Although not determinative of the issues, as the Court finds the terms of the Agreement

10  unambiguously waive the right to bring a class action given all covered disputes must be handled

11  by individual arbitration, the Court agrees Article III and Rule 23 considerations bolster the

12  Defendants' positions and counter Plaintiff's arguments concerning the class waiver and her

13  reliance on Irving, Passmore, and Novosad.  The cases provided by Defendants do support these

14  positions, and the Court has located additional specific support for the principles proffered by

15  Defendants.

16        Given all of Plaintiff's employment claims must be settled through individual arbitration

17  (aside from any non-waivable PAGA claims which are not brought in this action), any personal

18  stake Plaintiff would have in a class action would be rendered moot by the arbitration.  See

19  Sanford v. MemberWorks, Inc., 625 F.3d 550, 556 (9th Cir. 2010) ("Mootness [is] the doctrine

20  of standing set in a time frame: The requisite personal interest that must exist at the

21  commencement of the litigation (standing) must continue throughout its existence (mootness).")

22  (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)) (alteration in quoting

23  source).  "Generally, when a party settles all of his personal claims before appeal, an appeals

24  court must dismiss the appeal as moot unless that party retains a personal stake in the case that

25  satisfies the requirements of Article III . . . [and to maintain a personal stake]

26  _____

27  550, 560-61 (9th Cir. 2010) ("The Smiths contend that even if they cannot represent an EFTA class, the district
court should have permitted a debit purchaser to intervene to represent the class . . . [h]owever, where . . . the

28  original plaintiffs were never qualified to represent the class, a motion to intervene represents a back-door attempt to
begin the action anew, and need not be granted.") (citations omitted).

1    a class representative cannot release any and all interests he or she may have had

2    in class representation through a private settlement agreement." Sanford, 625 F.3d at 556

3    (citations omitted); Passa v. City of Columbus, OH, No. 2:03-CV-81, 2010 WL 1372455, at *4-5

4    (S.D. Ohio Mar. 30, 2010) ("According to plaintiff, her case against the payday lenders,

5    including Check$mart, is not moot because her personal stake in obtaining class certification is

6    separate from the merits of [her] individual case . . . the Court is not persuaded that plaintiff

7    retains a personal stake in class certification of claims against Check$mart sufficient to satisfy

8    the case or controversy requirement of Article III . . . Unlike the plaintiffs in those cases, plaintiff

9    Passa's individual claims were not resolved involuntarily . . . [r]ather, those claims have been

10   rendered moot by virtue of the arbitration process, *i.e.,* a process voluntarily entered into by her

11   as a part of her contract with Check$mart.").

12        There is an exception to the mootness doctrine "where the named plaintiff's claim

13   becomes moot *before* class certification, if the claim 'is capable of repetition, yet evading

14   review, [and] the named plaintiff may litigate the class certification issue despite loss of

15   his personal stake in the outcome of the litigation,' [and] [i]n such cases, the class certification

16   'relates back' to the filing of the complaint when the named plaintiff still had a personal stake."

17   Owen v. Regence Bluecross Blueshield of Utah, 388 F. Supp. 2d 1318, 1330 (D. Utah 2005)

18   (citations omitted).  The Court finds this exception not applicable here as "this rule only applies

19   'where the named plaintiff does have a personal stake at the outset of the lawsuit, and where the

20   claim may arise again *with respect to that plaintiff*."  Id. ("In other words, the capable of

21   repetition, yet evading review, exception does not apply unless the same injury could occur to

22   the named plaintiff again [but if] there is no chance that the named plaintiff's expired claim will

23   reoccur, mootness [can only be avoided] through certification of a class prior to expiration of the

24   named plaintiff's personal claim.") (citations and footnotes omitted).

25        "As a matter of federal procedure, courts granting a motion to compel

26   individual arbitration simultaneously render the individual's class claims moot." Edwards v.

27   Chartwell Staffing Servs., Inc., No. CV 16-9187 PSG (KSX), 2017 WL 10574360, at *7 (C.D.

28   Cal. May 30, 2017) (citations omitted).  Accordingly, because the Court finds the Agreement

1  requires Plaintiff to arbitrate all covered claims in individual arbitration, the Court finds Plaintiff

2  is precluded from joining in a class action.  See Douglas v. U.S. Dist. Ct. for Cent. Dist. of

3  California, 495 F.3d 1062, 1069 (9th Cir. 2007) ("If Douglas's individual claim is rendered moot

4  because it is fully satisfied as a result of the arbitration, he would lose his status as class

5  representative because he would no longer have a concrete stake in the controversy."); Genesis

6  Healthcare Corp. v. Symczyk, 569 U.S. 66, 73 (2013) ("In the absence of any claimant's opting

7  in, respondent's suit became moot when her individual claim became moot, because she lacked

8  any personal interest in representing others in this action . . . the mere presence of collective-

9  action allegations in the complaint cannot save the suit from mootness once the individual claim

10  is satisfied."); Edwards, 2017 WL 10574360, at *7 ("Because the arbitration provision binds

11  Edwards to the results of his individual arbitration, he could not join together with other

12  employees to litigate his class claims in federal court . . . [t]hus, if the Court were to grant

13  Chartwell's motion to compel individual arbitration here, the Court would also dismiss

14  Edwards's class claims."); Lopez v. YourPeople Inc., No. CV-16-03982-PHX-JZB, 2017 WL

15  3086864, at *7 (D. Ariz. July 20, 2017).

16      The Court also agrees with Defendants' contention that Plaintiff could not satisfy the

17  Rule 23 requirements of adequacy and typicality because a plaintiff cannot assert claims on

18  behalf of a class that she cannot assert alongside her individual claims.  See Sanford, 625 F.3d at

19  560–61 (9th Cir. 2010) ("When a named plaintiff has no cognizable claim for relief, 'she cannot

20  represent others who may have such a claim, and her bid to serve as a class representative must

21  fail.' ") (quoting Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir.2003)).

22      The Court finds for all of the above reasons, that a valid agreement to arbitrate exists, and

23  that the Agreement covers the claims in this action.  The Court now turns to Plaintiff's

24  arguments that the Agreement is unconscionable, and to consider whether any unconscionability

25  impacts the validity, coverage, or enforceability of the Agreement.

26      **E.    Unconscionability of the Agreement**

27      Plaintiff submits that substantive and procedural unconscionability permeate and underly

28  the Agreement, and thus that the Agreement is unenforceable as "Defendants unilaterally forced

1  Plaintiff to unknowingly sign the purported agreement, which contained several unconscionable

2  terms, and without any ability to negotiate those terms (even after she was represented by

3  counsel)."  (Opp'n 14.)

4         The California Civil Code provides that "[i]f the court as a matter of law finds the

5  contract or any clause of the contract to have been unconscionable at the time it was made the

6  court may refuse to enforce the contract, or it may enforce the remainder of the contract without

7  the unconscionable clause, or it may so limit the application of any unconscionable clause as to

8  avoid any unconscionable result."   Cal. Civ. Code § 1670.5(a).   This provision applies to

9  arbitration agreements.  Peng v. First Republic Bank, 219 Cal. App. 4th 1462, 1469 (2013), as

10  modified (Oct. 2, 2013).

11         "[U]nconscionability has both a 'procedural' and a 'substantive' element, the former

12  focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly

13  harsh' or 'one-sided' results."  Peng, 219 Cal.App.4th at 1469 (quoting Armendariz, 24 Cal.4th

14  at 114).   Under California law, both procedural and substantive unconscionability must "be

15  present in order for a court to exercise its discretion to refuse to enforce a contract or clause

16  under the doctrine of unconscionability."  Id.; see also Poublon v. C.H. Robinson Co., 846 F.3d

17  1251, 1260 (9th Cir. 2017) ("In order to establish such a defense, the party opposing arbitration

18  must demonstrate that the contract as a whole or a specific clause in the contract is both

19  procedurally and substantively unconscionable.").   Procedural and substantive unconscionability

20  need not be present to the same degree and the more of one type of unconscionability that is

21  present the less evidence of the other type of unconscionability is required to find the agreement

22  unenforceable.  Peng, 219 Cal.App.4th at 1469; see also Pokorny v. Quixtar, Inc., 601 F.3d 987,

23  996 (9th Cir. 2010) ("California courts apply a 'sliding scale' analysis in making this

24  determination: 'the more substantively oppressive the contract term, the less evidence of

25  procedural unconscionability is required to come to the conclusion that the term is

26  unenforceable, and vice versa.' ") (quoting Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072

27  (9th Cir.2007)); Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 922 (9th Cir. 2013) (same).

28         1.      Procedural Unconscionability

The procedural unconscionability analysis starts "with an inquiry into whether the contract is one of adhesion." Armendariz, 24 Cal.4th at 113; see also Peng, 219 Cal.App.4th at 1462 ("The procedural element of an unconscionable contract generally takes the form of a contract of adhesion. . . .") (quoting Little v. Auto Stiegler, Inc., 29 Cal.4th 1064, 1071 (2003)). "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal.4th at 113; Peng, 219 Cal.App.4th at 1462. "The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.' " Poublon, 846 F.3d at 1260 (quoting Pinnacle Museum Tower Ass'n, 55 Cal.4th at 246). "California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive." Poublon, 846 F.3d at 1260 (quoting Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc., 232 Cal. App. 4th 1332, 1348 (2015), as modified on denial of reh'g (Feb. 9, 2015)).

### a.    Oppression and Whether Contract of Adhesion

Plaintiff submits the Agreement is a contract of adhesion because it was unilaterally drafted by Defendants with their superior bargaining strength and legal sophistication, without affording Plaintiff as the weaker party any opportunity to negotiate the terms. Plaintiff emphasizes that the unconscionability is higher here because of the inherently oppressive nature of the employer-employee relationship. See Baltazar v. Forever 21, Inc., 62 Cal. 4th 1237, 1244, (2016) ("We have instructed that courts must be 'particularly attuned' to this danger in the employment setting, where 'economic pressure exerted by employers on all but the most sought-after employees may be particularly acute.' ") (quoting Armendariz, 24 Cal.4th at 115). Defendants argue that courts routinely enforce arbitration agreements that are contained within contracts of adhesion, and indeed the Supreme Court's decision in Concepcion involved a contract of adhesion. See Concepcion, 563 U.S. at 346–47 n.6 ("Of course States remain free to take steps addressing the concerns that attend contracts of adhesion . . . [s]uch steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private arbitration

1   agreements are enforced according to their terms.").

2   "It is well settled that adhesion contracts in the employment context, that is, those

3   contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of

4   procedural unconscionability." Peng, 219 Cal.App.4th at 1470 (quoting Serpa v. California

5   Surety Investigations, Inc., 215 Cal.App.4th 695, 704 (2013)).  In such circumstances, courts

6   recognize the reality that the employee has a lack of choice and "the potential disadvantages that

7   even a fair arbitration system can harbor for employees." Armendariz, 24 Cal.4th at 115.  But

8   this is not dispositive, and courts observe that "[w]hen, as here, there is no other indication of

9   oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is

10  low, and the agreement will be enforceable unless the degree of substantive unconscionability is

11  high." Peng, 219 Cal.App.4th at 1470 (Serpa, 215 Cal.App.4th at 704).  "The 'central idea' is

12  that "the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but

13  with terms that are unreasonably favorable to the more powerful party." Poublon, 846 F.3d at

14  1261 (quoting Baltazar v. Forever 21, Inc., 62 Cal.4th 1237, 1244 (2016)).

15  Here, the Court finds some slight procedural unconscionability is present given the

16  relative power of the parties, and because Plaintiff did not have the apparent ability to negotiate

17  the specific terms of the Agreement. or at least should not be reasonably expected to have

18  partaken in a contract negotiation process that parties on a more equal footing might engage in.

19  However, significantly, Plaintiff did have the ability to opt-out of the Agreement and the ability

20  to consult legal counsel for thirty (30) days after signing.  This was not a take it or leave it

21  contract of adhesion; Plaintiff had to the ability to opt-out of the Agreement within thirty (30)

22  days, and the Agreement provides in bolded and capitalized lettering that: "**ARBITRATION IS**

23  **NOT A MANDATORY CONDITION OF YOUR EMPLOYMENT . . . YOU MAY**

24  **FOLLOW THE BELOW PROCEDURES . . . TO OPT OUT AND NOT BE SUBJECT TO**

25  **THIS AGREEMENT.**"  (Agreement at 3.)

26  Plaintiff argues undue surprise further demonstrates procedural unconscionability.  First,

27  Plaintiff states the Agreement was "virtually hidden by its inclusion amongst the volume of

28  innocuous other 'acknowledgement' forms that Plaintiff was required to sign, and during which

1   she was rushed through after working a full eight-hours long Sunday." (Opp'n 16.)  Given she is

2   a layperson without legal knowledge, Plaintiff proffers she did not know what arbitration was

3   and was not on the lookout for such document, nor realized she was signing a contract at all –

4   "Plaintiff was told merely that she was signing innocuous acknowledgment forms regarding

5   Defendants' various policies."  (Id.)  Plaintiff argues she was rushed through the process, was

6   never alerted the Agreement was included in the first place, and was never apprised the

7   Agreement could significantly alter her legal rights, demonstrating "at least a modicum of

8   surprise."  (Opp'n 16.)[3]  Plaintiff argues she had to sign the documents after an eight-hour

9   workday, however, Defendants have submitted a declaration and business records asserting

10  Plaintiff's contention is incorrect, as summarized above, Section III(B), <u>supra</u>.  The Court may

11  consider evidence outside the pleadings on a motion to compel arbitration.  <u>Manuwal v. BMW of</u>

12  <u>N. Am., LLC</u>, 484 F.Supp.3d 862, 865 n.1 (C.D. Cal. 2020); <u>see also</u> <u>Arredondo v. Sw. & Pac.</u>

13  <u>Specialty Fin., Inc.</u>, No. 1:18-CV-01737-DAD-SKO, 2019 WL 4596776, at *4-5 (E.D. Cal. Sept.

14  23, 2019) (considering evidence presented by the parties in motion to compel arbitration); <u>see</u>

15  <u>also</u> <u>Hansen v. Rock Holdings, Inc.</u>, 434 F.Supp.3d 818, 824 (E.D. Cal. 2020) (considering

16  motion to compel arbitration under standard similar to Federal Rule of Civil Procedure 56 and

17  stating the "party opposing arbitration receives the benefit of any reasonable doubts and the court

18  draws reasonable inferences in that party's favor.  Only when no genuine disputes of material

19  fact surround the arbitration agreement's existence may the court compel arbitration.").   In

20

---

[3]  In arguing surprise, Plaintiff also submits that she made good faith efforts to discover whether she was subject to
21  an arbitration agreement before initiating litigation by serving Defendants with correspondence requesting
disclosure of her personnel file on October 2, 2020, but Defendants never responded to the letter.  (Opp'n 16.)
22  Previously, Plaintiff's counsel attempts to discover whether Defendants subject their employees to
arbitration by serving a similar request on behalf of the former named Plaintiff in this action, Ms. Strauch, in April
23  of 2020. (Opp'n 16.)  Defendants responded to the letter in May of 2020, noting only that she had previously settled
her claims, but otherwise refusing to produce other documents.  (Id.)  The Court finds these arguments irrelevant to
24  the issue of procedural unconscionability.  <u>See</u> <u>OTO, L.L.C. v. Kho</u>, 8 Cal. 5th 111, 126 (2019) ("The pertinent
question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer
25  scrutiny of its overall fairness is required.").  Defendants also proffer that Plaintiff's argument is disingenuous given
Plaintiff's counsel declares the Defendants received the correspondence on October 8, 2020, the same day that
26  Plaintiff substituted in as the named Plaintiff in the first amended complaint, and thus Defendants had no legal
obligation to respond to the statutory records request.  It appears Defendants' argument has merit.  <u>See</u> Cal. Lab.
27  Code § 1198.5(n) ("If an employee or former employee files a lawsuit that relates to a personnel matter against his
or her employer or former employer, the right of the employee, former employee, or his or her representative to
28  inspect or copy personnel records under this section ceases during the pendency of the lawsuit in the court with
original jurisdiction.").

1  "resolving a motion to compel, the district court sits as the fact-finder, weighing the evidence."

2  Rejuso v. Brookdale Senior Living Communities, Inc., No. CV175227DMGRAOX, 2018 WL

3  6174764, at *6 (C.D. Cal. June 5, 2018) (citing Ruiz v. Moss Bros. Auto Grp., Inc., 232

4  Cal.App.4th 836, 842 (2014)).

5       Even accepting Plaintiff's declaration at face value, Plaintiff has not demonstrated she

6  was coerced, and Plaintiff was afforded thirty (30) days to opt-out of the Agreement.  See Dotson

7  v. Amgen, Inc., 181 Cal. App. 4th 975, 981 (2010) ("Dotson does not assert that his decision to

8  accept the condition was rushed or coerced.").  The Agreement is not unnecessarily long or

9  presented in a confusing format, totaling only 3 pages.  Id. ("The agreement is not overly-long

10  and is written in clear, unambiguous language.").  Arbitration was not a condition of

11  employment, and that was emphasized in the document's language.  C.f. Id. ("The fact that

12  arbitration was a condition of employment was stated numerous times and was set forth in large,

13  bold typeface.").

14       The Court does not find the Agreement to be oppressive, both in the ability to opt-out,

15  and given the terms pertaining to arbitration.  Poublon, 846 F.3d at 1260.  Ultimately, the Court

16  agrees with Defendants that this is not a contract of adhesion.  First, the Agreement's

17  introductory paragraph contains both a notice that the Agreement contains an opt-out provision

18  and a forewarning to carefully read all parts of the contract, in bold capitalized letters.

19  (Agreement at 1.)  The Agreement's provision pertaining to the right to opt-out and the

20  opportunity to consult legal counsel was also laid out in bolded emphasized language, which the

21  Court reproduced in full above.  (Agreement at 3.)  Thus, the Agreement: contained a clear and

22  emphasized opt-out provision describing the ability of the Plaintiff to utilize a thirty (30) day

23  period of time to decide whether to opt-out and of her right to discuss the provision with legal

24  counsel; emphasized agreeing to arbitration is not a condition of employment; and provided

25  multiple methods to provide notice of opting out.  The Court finds the Agreement as a whole is a

26  not a contract of adhesion.  Cir. City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1199–200 (9th Cir.

27  2002) (employee "not presented with a contract of adhesion because he was given the

28  opportunity to opt-out of the Circuit City arbitration program by mailing in a simple one-page

1   form."); <u>Mohammad v. T-Mobile USA, Inc.</u>, No. 2:18-CV-00405-KJM-DB, 2018 WL 6249910,

2   at *5 (E.D. Cal. Nov. 29, 2018) ("There is no contract of adhesion if the contract provides a

3   meaningful opportunity to opt out of arbitration."); <u>Eastburn v. CVS Pharmacy Inc.</u>, No.

4   SACV2001961DOCJDEX, 2021 WL 4712713, at *4 (C.D. Cal. Mar. 15, 2021) ("[W]here

5   an opt out provision is offered, courts have held that an Arbitration Agreement

6   is not a contract of adhesion . . .   Plaintiff could have opted out by sending a letter so stating to

7   Defendant within 30 days . . . the Court finds that there was not procedural unconscionability

8   here because Defendant provided Plaintiff with an opt out provision."); <u>Trout v. Comcast Cable</u>

9   <u>Commc'ns, LLC</u>, No. 17-CV-01912-RS, 2018 WL 4638705, at *5 (N.D. Cal. Mar. 15, 2018)

10  ("Although Trout insists this was a contract of adhesion, the opt-out opportunity means it

11  was not . . . notice of the arbitration provision was also bold, in all caps, up front, and provided in

12  plain language . . . was highlighted, not hidden . . .   Trout has failed to show any significant

13  procedural unconscionability.").

14         The Court finds the totality of the circumstances involving the onboarding process and

15  electronic review and signature of the employment agreements do not demonstrate any

16  significant procedural unconscionability.  See <u>Martinez v. Vision Precision Holdings, LLC</u>, No.

17  119CV01002DADJLT, 2019 WL 7290492, at *8 (E.D. Cal. Dec. 30, 2019) ("Indeed, the

18  practice of asking a new employee to review a packet of new hire paperwork is essentially an

19  everyday occurrence, and there is nothing about plaintiff's experience, as she describes it, that

20  would qualify as 'surprise[,]' . . . [and] the court concludes that simply including the Agreement

21  with other new hire paperwork is not procedurally unconscionable."); <u>Poublon</u>, 846 F.3d 1251,

22  1261 n.2 ("For purposes of determining procedural unconscionability, the California Supreme

23  Court has held that 'surprise or other sharp practices' may arise when a party with less

24  bargaining power is not told about an unusual provision, or the party is otherwise 'lied to, placed

25  under duress, or otherwise manipulated into signing the arbitration agreement.' ") (citing

26  <u>Baltaz</u>ar, 62 Cal.4th at 1245).  Indeed, while Plaintiff was afforded thirty (30) days to opt out of

27  the Agreement, Defendants highlight in Martinez, giving an employee three days to review the

28  agreement was not indicative of oppression.  See <u>Martinez</u>, 2019 WL 7290492, at *5 ("Three

1  days—two of which were over the weekend—to review a reasonable amount of paperwork is not

2  indicative of oppression . . . where courts found oppression, employers pressured their

3  employees to sign arbitration agreements without giving them time to review the agreements.").

4          **b.      Confusion and Representative Action Waiver**

5          Plaintiff argues the Agreement is intentionally misleading and confusing to a layperson,

6  and drafted in overly confusing language.  As an example Plaintiff proffers that the class and

7  representative action waiver section includes a purported waiver of a PAGA action, and the

8  provision is intentionally misleading because it "appears to be here for the sole purpose of

9  confusing Plaintiff as to her right to pursue a representative action," as Defendants know or

10  should know that a waiver of such representative claims under PAGA is against public policy

11  and unenforceable, Iskanian v. CLS Transp. L.A., LLC, 59 Cal. 4th 348, 384 (2014).  Plaintiff

12  argues because Defendants must have known PAGA claims are not subject to arbitration,

13  Plaintiff, a layperson making near minimum wage, cannot be expected to keep up with the latest

14  arbitrational jurisprudence, and thus Defendants took advantage of this vast disparity in legal

15  sophistication and included the provision only to confuse their employees and dissuade them

16  from bringing PAGA claims at all.

17          Defendants respond that this Court has previously held such unenforceability of the

18  PAGA waivers do not make an agreement *substantively* unconscionable.  Martinez, 2019 WL

19  7290492, at *12.  It was also noted in Martinez that some courts, including judges in the Eastern

20  District of California, "have concluded that a plaintiff who has not asserted PAGA claims cannot

21  argue that a PAGA waiver is unconscionable."   Martinez, 2019 WL 7290492, at *12

22  (citing  Shoals v. Owens & Minor Distribution, Inc., No. 2:18-cv-2355-WBS-EFB, 2018 WL

23  5761764, at *7 (E.D. Cal. Oct. 31, 2018)).  However, Judge Drozd stated "[a]bsent binding

24  precedent, the court declines to adopt that reasoning," and acknowledged "the very presence of a

25  representative PAGA waiver may deter litigants from even trying to bring a claim in the first

26  place, thereby undermining state law and public policy."  Martinez, 2019 WL 7290492, at *12.

27  However, the Court noted "case law is clear that the unenforceability of the waiver of a PAGA

28  representative action does not make this provision substantively unconscionable . . . [and]

1    [a]lthough plaintiff has shown that representative PAGA waivers are unenforceable, she has not

2    provided a rationale as to why it is unconscionable, especially because plaintiff has not even

3    brought any PAGA claims."   Martinez, 2019 WL 7290492, at *12 (severing the PAGA waiver

4    section as unenforceable).   While the discussion therein was about substantive unconscionability,

5    the Court finds the discussion tends to show less procedural unconscionability is present here.

6            Additionally, Defendants emphasize the provision here on their face only expressly apply

7    to the extent permissible by law, and the Agreement further expressly permits the Court to sever

8    any unlawful provision if necessary.   (Agreement 2-3.)   While Defendants submit that

9    severances is not applicable because (1) Plaintiff does not assert any PAGA claims in this case;

10   and (2) the waiver would only apply if permissible by law (and thus cannot be unlawful), and

11   therefore the Agreement is not unenforceable.   Additionally, Defendants argue that the opt-out

12   provision further undermines the "confusion" argument because Plaintiff could have availed

13   herself of the 30 days provided to seek counsel or opt out of the Agreement entirely.   The Court

14   discusses whether severance is necessary further below, however, these facts lend to a finding of

15   less procedural unconscionability.   However, the fact the Agreement contains a proviso limiting

16   it to the extent allowed under law, is not significant to the Court as any contract is necessarily

17   limited by the extent of the law.

18           Additionally, Defendants submit that contrary to Plaintiff's contentions, in the Fall of

19   2019, a particular type of PAGA claim was indeed subject to arbitration.   See Esparza v. KS

20   Indus., L.P., 13 Cal. App. 5th 1228 (2017) (the portion of a PAGA claim seeking "underpaid

21   wages" pursuant to California Labor Code §558(a)(3) held subject to arbitration as "[t]he rule of

22   nonarbitrability adopted in *Iskanian* is limited to representative claims for civil penalties in

23   which the state has a direct financial interest."); Mandviwala v. Five Star Quality Care, Inc., 723

24   F. App'x 415, 417 (9th Cir. 2018) ("While Mandviwala's claims for PAGA civil penalties are not

25   subject to arbitration, Mandviwala's claims for unpaid wages under California Labor Code § 558

26   are subject to arbitration.").   However the California Supreme Court overruled Esparza in

27   September 2019 and held that Section 558(a)(3) penalties are "not recoverable through a PAGA

28   action," rendering the PAGA arbitration question moot in that context.   ZB, N.A. v. Sup. Ct., 8

1  Cal. 5th 175, 188 (2019).

2      The Court finds these fact could be persuasive in finding the inclusion of such provision

3  with the specification of to the extent applicable to law was reasonable by Defendants and not an

4  indication of an intent to mislead as Plaintiff argues, however, the Agreement was signed on

5  October 6, 2019, and thus must be noted that the ruling had been issued by the time the

6  Agreement was signed.   Nonetheless, this does appear to lessen the basis of Plaintiff's

7  allegations of nefarious intent on the part of Defendants.   Such facts are not necessary for

8  determination of unconscionability given the totality of the circumstances before the Court.

9      **c.    Ambiguity of Arbitration Rules**

10      Finally, Plaintiff argues surprise by ambiguity as to what set of arbitration rules will

11  apply and by failing to attach the rules to the Agreement.  (Opp'n 18.)  Plaintiff states that

12  instead of clarifying that the "employment law" rules of JAMS or AAA apply, the Agreement

13  only vaguely states that "the current applicable rules" of either AAA or JAMS will apply, and

14  some of the differing provisions carry extraneous provisions that require the parties to share

15  various costs on a pro rata basis.  Plaintiff contends Defendants thus placed an onerous burden

16  on Plaintiff to ferret out the various terms and rules found within AAA and JAMS by herself,

17  attempt to discern which sets of rules amongst two differing ADR organizations would be better

18  suited for her case, made more difficult by not attaching either set of rules to the Agreement.

19  (Opp'n 18.)

20      This Court has previously found a failure to attach the arbitration rules may add slightly

21  to a showing of procedural unconscionability.  See Calzadillas v. Wonderful Co., LLC, No.

22  119CV00172DADJLT, 2019 WL 2339783, at *9 (E.D. Cal. June 3, 2019) ("[W]hether the

23  failure to attach additional arbitration rules which are incorporated by reference into the

24  arbitration agreement amounts to unconscionability is a procedural question, not a substantive

25  one . . . [and] the failure to attach the JAMS Rules 'adds a bit' to that analysis.") (citation

26  omitted).   The Court notes the rules are not explicitly incorporated by reference into the

27  Agreement, however the Agreement states that arbitration must be conducted under the JAMS or

28  AAA rules.  (Id.)  The Agreement provides the website URLs for the rules, and states the

1    employer can provide hard copies of the rules upon request.  (Id.)  Defendants argue Plaintiff

2    essentially has the ability to dictate which set of rules apply by initiating the arbitration in her

3    chosen forum between AAA and JAMS.

4          The Court finds "[t]he absence of the . . . arbitration rules adds a bit to the procedural

5    unconscionability."  Zullo v. Superior Ct., 197 Cal. App. 4th 477, 485 (2011).  However it is

6    lessened by the fact the Agreement provides thirty (30) days to investigate the rules before

7    choosing whether to opt out.  Further, such fact is only one factor in determining procedural

8    unconscionability.  Carbajal v. CWPSC, Inc., 245 Cal. App. 4th 227 (2016) (The "failure to

9    provide a copy or even identify the governing rules is not the sole basis for finding the agreement

10   to be procedurally unconscionable; it is merely one factor contributing to that conclusion.").

11         The Court does not find any significant procedural unconscionability stemming from the

12   lack of attachment.  See Poublon, 846 F.3d at 1262 ("While 'courts will more closely scrutinize

13   the substantive unconscionability of terms that were artfully hidden by the simple expedient of

14   incorporating them by reference rather than including them in or attaching them to the arbitration

15   agreement,' incorporation by reference, without more, does not affect the finding of procedural

16   unconscionability.") (quoting Baltazar, 62 Cal. 4th at 1246); see also Martinez, 2019 WL

17   7290492, at *7 ("Following the reasoning set forth in *Baltazar* and *Poublon*, this court concludes

18   that defendant's failure to provide plaintiff with a copy of the AAA Rules is not an instance of

19   oppression.").  The Court does not find giving the choice between the JAMS and AAA adds

20   significantly, if even slightly, to the procedural unconscionability analysis, as Plaintiff is entitled

21   to dictate which set of rules apply in her preferred forum, and simply giving Plaintiff the choice

22   does not establish the requisite oppression to support a finding of procedural unconscionability.

23   See Bankwitz v. Ecolab, Inc., No. 17-CV-02924-EMC, 2017 WL 4642284, at *3 (N.D. Cal. Oct.

24   17, 2017) ("Courts have held that an agreement is not procedurally unconscionable for failure to

25   specify what version of arbitration rules apply when the rules themselves do so.").  Finally,

26   Plaintiff's argument that the failure to specify that the "employment" subset of rules will apply

27   rather than another subset is unconscionable, is unavailing, as both sets of rules specify that their

28   respective employment rules apply to employment disputes.  See *AAA Employment Rule 1 and*

1     *JAMS Employment Rule 1*, available at: https://www.jamsadr.com/rules-employment-

2     arbitration/english#one (JAMS) and https://adr.org/employment (AAA) (last accessed December

3     2, 2021).

4            **d.**      **The Court Finds No Significant Procedural Unconscionability**

5          The totality of the circumstances as presented, including the onboarding process and the

6     layout of the 3-page agreement with its bolded and emphasized opt-out provisions and other

7     language encouraging consulting with an attorney, demonstrate a lack of other indicia of

8     procedural unconscionability. See Ahmed, 283 F.3d at 1199–200 ("Moreover, and apart from its

9     non-adhesive nature, the arbitration agreement here also lacked any other indicia of procedural

10    unconscionability[:] [t]he terms of the arbitration agreement were clearly spelled out in written

11    materials and a videotape presentation; Ahmed was encouraged to contact Circuit City

12    representatives or to consult an attorney prior to deciding whether to participate in the program;

13    and he was given 30 days to decide whether to participate in the program."); Mohammad, 2018

14    WL 6249910, at *5 ("Moreover, neither the arbitration agreement nor the opt-out provision were

15    hidden terms . . . the arbitration agreement itself is written in capitalized and bolded letters in the

16    2014, 2015, and 2016 Terms & Conditions . . . The op-out provision immediately follows the

17    arbitration agreement in the Terms & Conditions and is also written in capitalized and bolded

18    letters . . . T-Mobile thus clearly advised plaintiffs of both the legal consequences of failing to

19    opt out and the mechanisms by which they could do so.").

20          Additionally, Plaintiff's arguments concerning the greater legal sophistication of the

21    Defendants do not change the Court's findings and analysis. See Ahmed, 283 F.3d at 1200

22    (rejecting argument that employee "was not given a meaningful opportunity to opt out of the

23    arbitration program because he did not have the degree of sophistication necessary to recognize

24    the meaning of the opt-out provision or to know how to avoid it, and because 30 days was too

25    short a period in which to make a decision  . . . the general rule is that 'one who signs a contract

26    is bound by its provisions and cannot complain of unfamiliarity with the language of the

27    instrument[,]' [and] Ahmed was given ample opportunity to investigate any provisions he did not

28    understand before deciding whether to opt out.") (quoting Madden v. Kaiser Found. Hosps., 17

1   Cal.3d 699 (1976)).

2         If there is a low degree of procedural unconscionability, the degree of substantive

3   unconscionability must be high to find the Agreement unenforceable.  See Dotson, 81 Cal. App.

4   4th at 982.  Because the Court finds that any procedural unconscionability is slight, if existent at

5   all, substantive unconscionability would have to be high on the sliding scale.  In fact, because the

6   contract is not a contract of adhesion, the Court could likely forego the substantive

7   unconscionability analysis given the lack of other indicia of procedural unconscionability.  See

8   Ahmed, 283 F.3d at 1200 ("Because Ahmed fails to satisfy even the procedural

9   unconscionability prong, we need not reach his arguments that the agreement is substantively

10  unconscionable."); Trout, 2018 WL 4638705, at *5 ("Although the analysis could end [after

11  finding no significant procedural unconscionability], Trout has also failed to show substantive

12  unconscionability.").   Nonetheless, the Court shall now proceed to discuss whether the

13  Agreement is substantively unconscionable.

14        2.    Substantive Unconscionability

15        For a contract to be substantively unconscionable the contract must be more than merely

16  one-sided or overly harsh, and some courts have required the terms to be so one sided that they

17  "shock the conscious."   Peng, 219 Cal.App.4th at 1469; Chavarria, 733 F.3d at 923 (Under

18  California law, a "contract is substantively unconscionable when it is unjustifiably one-sided to

19  such an extent that it 'shocks the conscience.' ").   "Where a party with superior bargaining power

20  has imposed contractual terms on another, courts must carefully assess claims that one or more

21  of these provisions are one-sided and unreasonable."  Id. (quoting Gutierrez v. Autowest, Inc.,

22  114 Cal.App.4th 77, 88 (2003)); Gatton v. T-Mobile USA, Inc., 152 Cal. App. 4th 571, 586

23  (2007) ("The substantive element of the unconscionability analysis focuses on overly harsh or

24  one-sided results.").   While substantive unconscionability "may take various forms," it is

25  typically "found in the employment context when the arbitration agreement is 'one-sided' in

26  favor of the employer without sufficient justification, for example, when 'the employee's claims

27  against the employer, but not the employer's claims against the employee, are subject to

28  arbitration."   Peng, 219 Cal.App.4th at 1472–73 (quoting Little, 29 Cal.4th at 979 and

1    Armendariz, 24 Cal.4th at 117).  "[A]n agreement is substantively unconscionable where its

2    enforcement would work 'a substantial degree of unfairness beyond a simple old-fashioned bad

3    bargain.' "  Calzadillas, 2019 WL 2339783, at *9 (quoting Sanchez v. Valencia Holding Co.,

4    LLC, 61 Cal. 4th 899, 911 (2015)).

5            **a.    Representative Action and PAGA Waiver**

6            Plaintiff argues the Agreement's PAGA Waiver portion is substantively unconscionable

7    as it attempts to waive representative status for claims brought pursuant to PAGA, "or at least

8    sow confusion amongst Plaintiff and Class members as to their ability to pursue a representative

9    action pursuant to PAGA."  (Opp'n 19.)  The Court considers the substantive unconscionability

10   of the PAGA/representative action waiver despite the fact Plaintiff has not brought such claim in

11   this action.  See Martinez, 2019 WL 7290492, at *12 ("[S]ome . . . have concluded that a

12   plaintiff who has not asserted PAGA claims cannot argue that a PAGA waiver is unconscionable

13   . . . the court declines to adopt that reasoning, as the very presence of a representative PAGA

14   waiver may deter litigants from even trying to bring a claim in the first place, thereby

15   undermining state law and public policy."); Stanley v. Kelly Servs. , No. 20-cv-01376-EMC,

16   2020 U.S. Dist. LEXIS 93350, at *21 (N.D. Cal. May 11, 2020) (though "not bringing a PAGA

17   claim, this Court still considers such argument for substantive unconscionability purposes.");

18   Subcontracting Concepts (CT), LLC v. De Melo , 34 Cal. App. 5th 201 (2019) ("The question in

19   determining unconscionability, however, does not involve comparing the terms of the arbitration

20   clause with the nonarbitration claims respondent is pursuing [but] [r]ather under Civil Code

21   section 1670.5, subdivision (a), we review the arbitration clause for substantive

22   unconscionability at the time the agreement was made.").

23          Plaintiff cites Brown v. Ralphs as an example of where a court found a PAGA waiver

24   was unconscionable.  See Brown v. Ralphs Grocery Co., 197 Cal. App. 4th 489, 498 (2011)

25   ("[T]he trial court. . . determined that the PAGA waiver was unconscionable, and that the PAGA

26   waiver and class action waiver together rendered the entire agreement unenforceable."), as

27   modified (July 20, 2011); see also Stanley v. Kelly Servs. , No. 20-cv-01376-EMC, 2020 U.S.

28   Dist. LEXIS 93350, at *21 (N.D. Cal. May 11, 2020).  However, the appeals court in Brown

1   found "the trial court did not consider whether the PAGA waiver provision, by itself, warranted

2   the nonenforcement of the entire arbitration agreement [and] therefore remand[ed] the matter to

3   the trial court to exercise its discretion to determine whether to sever the PAGA waiver provision

4   and enforce the arbitration agreement and class action waiver or whether to refuse to enforce the

5   entire agreement or portions thereof." Brown, 197 Cal. App. 4th at 498. "Following remand, the

6   trial court ruled that plaintiff's PAGA claim was severable from her non-PAGA claims, stayed

7   trial court proceedings as to the PAGA claim, and granted defendants' petition to compel

8   arbitration of plaintiff's non-PAGA claims on an individual basis." Brown v. Ralphs Grocery

9   Co., No. B247297, 2014 WL 880125, at *1 (Cal. Ct. App. Mar. 6, 2014). Here unlike Brown,

10  Plaintiff does not bring a PAGA claim.

11        In Stanley, also cited by Plaintiff, the court found some substantive unconscionability in

12  similar circumstances. Here in part, Defendants argue that the PAGA/representative waiver is

13  not unenforceable because it contains language that it is only applicable to "the extent

14  permissible by law." (Agreement at 2.) In Stanley, the court considered a similar argument as

15  the arbitration agreement there contained similar language, specifically, that: "Any claim that

16  cannot be required to be arbitrated as a matter of law also is not a Covered Claim under this

17  Agreement." Stanley, 2020 U.S. Dist. LEXIS 93350, at *22. The Stanley court rejected such

18  argument based on the fact the employee signatory is not in a position to understand the nuances

19  of the applicable law, and found "some substantive unconscionability":

20              The issue, however, is that *Iskanian*'s proscription of arbitrating
               PAGA claims is not clear from the face of the Agreement—and it
21             certainly would not be clear to a layperson. Moreover, the
               representative-action waiver is contained in Paragraph 8 of the
22             Agreement, but the definition of 'Covered Claims' is found in
               Paragraph 2, limitations of which are further defined in Paragraph
23             3. This is misleading to the average employee who is not versed in
               the current state of arbitration jurisprudence. An individual
24             seeking to represent other aggrieved employees may interpret
               Paragraph 8 of the Agreement and be deterred from pursuing a
25             representative action in court, believing that it is subject to
               arbitration, notwithstanding the Agreement's less-than-clear
26             limitation on such actions permitted by law. The Court thus finds
               some substantive unconscionability based on the Agreement's
27             ambiguity regarding the representative action waiver.

28

Stanley, 2020 U.S. Dist. LEXIS 93350, at *23.  However, no representative action was brought in the action, and while the Stanley court found some substantive unconscionability, the court did not sever the representative waiver, and found the class action waiver was not unconscionable. Id. at *29.  The Stanley court severed multiple other unconscionable provisions but still granted the motion to compel arbitration.  Id. at *33.

Plaintiff argues that the Agreement here is worse because it is intentionally misleading in seeking to waive the right to bring a PAGA action in arbitration, which is not allowed as a matter of law and thus inherently confusing and misleading.  Thus, Plaintiffs emphasize Defendants included the representative action waiver knowing the provision did not act to waive the employee's right to bring a representative action in court, and to the extent it is read that way, can never be enforceable – and thus this conduct represents degrees of substantive unconscionability above Stanley.  (Opp'n 20.)  The Court finds some substantive unconscionability from the inclusion of the PAGA waiver and arbitration provision, but it is not significant, given no representative action is brought here, and because of the reasons discussed above concerning the allegations of Defendants being intentionally misleading, Section III(E)(1)(b), supra.  The Court further finds the provision is severable.

The California Supreme Court has ruled that an arbitration agreement that includes a waiver of PAGA claims cannot be enforced.  Iskanian, 59 Cal.4th at 384.  Therefore, that provision of the Agreement could not be enforced and in a PAGA action the Court would be required to determine if the clause would be severable such that the remainder of the agreement could be enforced.  To the extent that Plaintiff could argue that the waiver of the PAGA claim made the Agreement unenforceable because it contains a PAGA waiver that does not apply to her claims, the Court finds that the invalid PAGA waiver is severable.

California law provides that "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Cal. Civ. Code § 1599; see also Fair v. Bakhtiari, 195 Cal.App.4th 1135, 1157 (2011) ("Civil Code section 1599 codifies the common law doctrine of severability of contracts.")  "If a contract is capable of severance, the decision whether to sever the illegal

1  portions and enforce the remainder is a discretionary decision for the trial court to make based on

2  equitable considerations." Fair, 195 Cal.App.4th at 1157. "Courts are to look to the various

3  purposes of the contract. If the central purpose of the contract is tainted with illegality, then the

4  contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the

5  contract, and the illegal provision can be extirpated from the contract by means of severance or

6  restriction, then such severance and restriction are appropriate." Marathon Entm't, Inc. v. Blasi,

7  42 Cal.4th 974, 996 (2008), as modified (Mar. 12, 2008). "[C]ourts will generally sever illegal

8  provisions and enforce a contract when nonenforcement will lead to an undeserved benefit or

9  detriment to one of the parties that would not further the interests of justice." Armendariz, 24

10 Cal. 4th at 127.

11       The PAGA waiver is not the main purpose, but is collateral to such purpose which is to

12 arbitrate the claims. The Agreement here specifically provides for the severability of parts of the

13 agreement held to be invalid or unenforceable. (Agreement at 3.) In this instance, although the

14 California Supreme Court has held that the PAGA waiver is unenforceable, Plaintiff has only

15 brought individual claims in this action and the agreement of the parties was that such claims

16 would be subject to arbitration.

17       The PAGA/representative waiver is set forth separately in the Agreement and can be

18 severed without invalidating the remainder of the Agreement to arbitrate Plaintiff's individual

19 claims. Severing the waiver provision would enforce the agreement of the parties and failing to

20 sever the PAGA waiver would be a detriment to Defendants and would provide Plaintiff with an

21 undeserved benefit by not requiring her to comply with the terms the Agreement. Severing

22 the PAGA waiver furthers the interests of justice.

23       The Court finds that the PAGA waiver is severable and, since no PAGA claim is brought

24 in this action, to hold otherwise would violate the "liberal federal policy favoring arbitration."

25 Whitworth v. SolarCity Corp., 336 F.Supp.3d 1119, 1130 (N.D. Cal. 2018); see also Nguyen v.

26 Tesla, Inc., No. 819CV01422JLSJDE, 2020 WL 2114937, at *5 (C.D. Cal. Apr. 6, 2020),

27 reconsideration denied, No. 819CV01422JLSJDE, 2020 WL 4530426 (C.D. Cal. July 24, 2020),

28 appeal dismissed, No. 20-55873, 2020 WL 6875203 (9th Cir. Nov. 20, 2020) (severing waiver

1   for seeking any public relief from any forum from arbitration agreement); <u>Levin v. Caviar, Inc.</u>,

2   146 F.Supp.3d 1146, 1159 (N.D. Cal. 2015) (severing PAGA waiver from arbitration

3   agreement). The provision is now unenforceable, and the Court would recommend severing the

4   provision despite the fact that Plaintiff has not brought a PAGA or representative action. <u>See</u>

5   <u>Martinez</u>, 2019 WL 7290492, at *12 (severing the PAGA waiver section as unenforceable noting

6   "case law is clear that the unenforceability of the waiver of a PAGA representative action does

7   not make this provision substantively unconscionable . . . [and] [a]lthough plaintiff has shown

8   that representative PAGA waivers are unenforceable, she has not provided a rationale as to why

9   it is unconscionable, especially because plaintiff has not even brought any PAGA claims.").

10          The unenforceable provision may be severed and the remainder of the Agreement can be

11   enforced.   The Court now turns to Plaintiff's additional arguments concerning substantive

12   unconscionability.

13          **b.    Plaintiff Fails to Demonstrate Substantive Unconscionability from**
            **Burdensome Costs and Fees**

14

15          Plaintiff submits the Agreement is substantively unconscionable because it is ambiguous

16   as to protections against burdensome costs or fees. Specifically, Plaintiff proffers the Agreement

17   provides either party can initiate arbitration, but the employee's share of costs are only limited if

18   employee initiates, where it provides that: "Either YOU or Employer may initiate arbitration. If

19   YOU initiate arbitration, YOU will be responsible for paying a filing fee of $150, which is not

20   more than YOU would have to pay if YOU filed a complaint in federal court." (Agreement at 2.)

21   Plaintiff argues the Agreement is wholly silent on who bears the costs of arbitration if

22   Defendants initiate, and because it is silent, the unclear choice-of-rule provision will determine

23   Plaintiff's costs.   Plaintiff further offers that because Defendants are moving to compel

24   arbitration, such arguably constitutes initiating arbitration for purposes of costs and fees.

25   Additionally, Plaintiff sought clarification from Defendants on this fee issue, asking to ensure

26   Plaintiff will only be subject to the $150 in costs and fees, but "Defendants utterly refused to

27   consider this clarification," which demonstrates they intend to enforce this provision as written

28   and will seek to impose undue fees and costs by initiating arbitration. (Opp'n 21.) Finally,

1  Plaintiff states that by incorporating two sets of rules, Defendants have placed an unnecessary

2  burden on Plaintiff by forcing her to parse the rules to determine what additional costs or fees

3  would apply under each respective set, and regardless of set, Plaintiff would arguably be subject

4  to sharing all costs on a *pro rata* basis, citing JAMS Employment Rule 31 ("unless the Parties

5  have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees").  (Id.)

6          Defendants reply that aside from a waivable $150 filing fee, the Agreement expressly

7  provides that the Defendants "will pay the remainder of the arbitration filing fees and the fees

8  and expenses of the arbitrator," where, as here, Plaintiff will initiate the arbitration.  As for

9  Plaintiff's argument that such language may not apply here, Defendants contend this argument

10 that Defendants' motion to compel is arguably initiating arbitration is disingenuous because if

11 the Court grants this motion, Plaintiff will be compelled to proceed, if at all, in arbitration, and if

12 Plaintiff chooses to do so, she will plainly be required to initiate such proceedings.  (Reply 11.)

13 As for the JAMS Employment Rule 31, the text quoted makes clear that the parties' Agreement

14 will control over the default payment rules.  (Reply 11.)

15         The Court agrees with Defendants and finds no substantive unconscionability stemming

16 from the cost provisions.  The Agreement provides that if Plaintiff initiates arbitration she will be

17 responsible for the $150 filing fee, which is waivable if the arbitrator finds financial hardship.

18 (Agreement at 2.)  The Agreement then states the "Employer will pay the remainder of the

19 arbitration fees and the fees and expenses of the arbitrator."  (Id.)  Without regard to the

20 initiation of arbitration, the Agreement then states "YOU will not be required to pay any type of

21 expense that YOU would not be required to pay if YOU brought the action in court."  (Id.)  The

22 Court finds no substantive unconscionability as the Agreement expressly provides that the

23 Plaintiff will not have to pay any type of expense that she would not have been required to pay in

24 a court of law.

25         **c.      Plaintiff Fails to Demonstrate Substantive Unconscionability from the**
            **Discovery Provisions of the Agreement**
26

27         Plaintiff agues the Agreement does not ensure Plaintiff will be allowed to conduct

28 adequate discovery, because the "arbitrator unilaterally determines what types of discovery will

41

1  be available to the parties." (Opp'n 22.)  With such discretion to the arbitrator, Plaintiff contends

2  the Defendants, as the more powerful parties, would reap the benefits of limited discovery

3  mechanisms, given Plaintiff would need to conduct much more extensive discovery on

4  Defendants than vice versa.  (Id.)  Plaintiff proffers that Defendants outright refused a proposal

5  to agree to entitle the parties to the same discovery mechanisms as in court, and submit this

6  demonstrates Defendants have no intention of providing a fair process to litigate Plaintiff's

7  claims.

8          Defendants respond that no rule of law requires the Agreement to specify the discovery

9  which Plaintiff is entitled or ensure Plaintiff is entitled to the precise same discovery as in a court

10  of law, (Reply 11).  See Armendariz, 24 Cal. 4th at 106 ("We further infer that when parties

11  agree to arbitrate statutory claims, they also implicitly agree, absent express language to the

12  contrary, to such procedures as are necessary to vindicate that claim . . . whether or not the

13  employees in this case are entitled to the full range of discovery provided in Code of Civil

14  Procedure section 1283.05, they are at least entitled to discovery sufficient to adequately

15  arbitrate their statutory claim, including access to essential documents and witnesses, as

16  determined by the arbitrator(s) and subject to limited judicial review pursuant to Code of Civil

17  Procedure section 1286.2 . . . Therefore, although the employees are correct that they are entitled

18  to sufficient discovery as a means of vindicating their sexual discrimination claims, we hold that

19  the employer, by agreeing to arbitrate the FEHA claim, has already impliedly consented to such

20  discovery.").

21          In fact, the parties may "agree to something less than the full panoply of discovery

22  provided in [a civil action]."  Paxton v. Macy's W. Stores, Inc., No. 1:18-CV-00132-LJO-SKO,

23  2018 WL 4297763, at *8 (E.D. Cal. Sept. 7, 2018) (quoting Ferguson v. Countrywide Credit

24  Indus., Inc., 298 F.3d 778, 787 (9th Cir. 2002) and Armendariz, 24 Cal. 4th at 105-06).  More

25  importantly the Agreement contains no "express language" limiting discovery, Armendariz, 24

26  Cal. 4th at 106, and to the contrary, the Agreement provides the "parties shall be entitled to

27  discovery sufficient to adequately arbitrate their statutory claims, as determined by the arbitrator,

28  and subject to limited judicial review in accordance with applicable law."  (Agreement at 2.)

1   Significantly, the Agreement then provides that: "Unless the arbitrator determines **additional**

2   discovery is necessary to adequately arbitrate the employee's claims, discovery shall be

3   conducted in accordance with the then current version of the Federal Rules of Civil Procedure."

4   (Id. (emphasis added).)

5         Thus the Court agrees with Defendants that the Agreement contemplates even more

6   liberal discovery than entitled to in federal court, and the Court therefore rejects Plaintiff's

7   contentions and find no substantive unconscionability as to the discovery provisions contained

8   within the Agreement.

9         3.    Unconscionability Overall

10         The Agreement here requires all parties to participate in binding arbitration for claims

11   arising under the agreement.  Since the Agreement applies equally to all parties in requiring

12   arbitration of any claims, the Court does not find it to be so one sided or unreasonable that it

13   would be found to be unconscionable.  The California Supreme Court has held that arbitration

14   agreements are enforceable as to employment related claims, including discrimination and

15   wrongful termination, if "the arbitration permits an employee to vindicate his or her statutory

16   rights."  Armendariz, 24 Cal. 4th at 91.  Such vindication occurs where the arbitration meets

17   certain minimum requirements, such as "neutrality of the arbitrator, the provision of adequate

18   discovery, a written decision that will permit a limited form of judicial review, and limitations on

19   the costs of arbitration."  Id. at 90-91.  The Court does not find any indication of substantive

20   unconscionability as described in Armendariz.  In the Court's view, the Agreement provides that

21   the claims will be arbitrated by a neutral arbitrator, a written decision will be issued, provides for

22   adequate discovery, and expressly limits the cost to Plaintiff.  As discussed in the following

23   section, aside from severing the PAGA/representative action waiver, the Court does not find

24   reformation necessary to afford Plaintiff a fair arbitration process here.

25         Under California law, an arbitration agreement is unconscionable only if it is both

26   procedurally and substantively unconscionable.  Peng, 219 Cal.App.4th at 146; Armendariz, 24

27   Cal.4th at 114.  For the above reasons, procedural unconscionability is slight if any, and

28   substantive unconscionability only flows slightly from the PAGA/representative waiver, which

1 can be severed from the Agreement.  Pokorny, 601 F.3d at 996 ("California courts apply a

2 'sliding scale' analysis in making this determination: 'the more substantively oppressive the

3 contract term, the less evidence of procedural unconscionability is required to come to the

4 conclusion that the term is unenforceable, and vice versa.' ").  Accordingly, the Court finds that

5 the arbitration agreement is valid and enforceable.

6          **F.**    **Plaintiff's Request to Reform the Agreement**

7        In California, if a court "concludes that a contract contains one or more unconscionable

8 clause, it may: (1) refuse to enforce a contract that was 'unconscionable at the time it was made';

9 (2) 'enforce the remainder of the contract without the unconscionable clause'; or (3) 'limit the

10 application of any unconscionable clause as to avoid any unconscionable result.' "  Poublon, 846

11 F.3d at 1272 (quoting Cal. Civ. Code § 1670.5(a)).

12        If the Court grants the motion to compel arbitration, Plaintiff requests modification of the

13 terms of the Agreement, pursuant to California Civil Code § 1670.5 and the severance clause of

14 the Agreement.  (Opp'n 23.)  Plaintiff requests the Court sever or modify the Agreement to

15 ensure Plaintiff receives a fair arbitration proceeding, and specifically requests: (1) Defendants

16 pay any and all costs and fees associated with arbitration in excess of the $150 filing fee; (2) the

17 parties be allowed the same discovery mechanisms as would be available to them in a court of

18 law; and (3) the JAMS Employment Rules apply, except for the fee-sharing provisions.

19        The Court agrees with Defendants and finds these three requested reformations to be

20 unnecessary and the Court recommends denying Plaintiff's requests as unnecessary to avoid any

21 unconscionable result.  First, as the Court discussed above, the Agreement already expressly

22 requires the Defendants to pay the fees and costs aside from the waivable $150 filing fee

23 incurred by Plaintiff initiating the arbitration, and finds Plaintiff's arguments concerning the

24 potential interpretation of this motion to compel as initiating arbitration by Defendants to be

25 unpersuasive.  (Agreement at 2 ("YOU will not be required to pay any type of expense that YOU

26 would not be required to pay if YOU brought the action in court").)  Second, the Agreement

27 already provides that at a minimum, the discovery allowed by the Federal Rules of Civil

28 Procedure will apply, unless the arbitrator determines that additional discovery is needed.  (Id.)

1    Third, Plaintiff's request to require that the JAMS Employment Rules apply is unnecessary

2    because the rules will necessarily apply if Plaintiff chooses to initiate arbitration with a JAMS

3    arbitrator.

4           Plaintiff argues the representative action waiver is unenforceable and should be severed,

5    and Defendants respond severance of the representative waiver is not necessary as it is not

6    relevant to the claims Plaintiff asserted, and is limited "to the extent permissible by law" already.

7    Some courts may find that where a plaintiff has not brought a PAGA claim in the action,

8    severance is unnecessary.  See Alvarado v. Lowe's Home Centers, LLC, No. 18-CV-03591-

9    HSG, 2018 WL 6697181, at *3 (N.D. Cal. Dec. 20, 2018) (where no assertion of PAGA claim,

10   holding "the Court need not determine at this time whether the Representative

11   Action Waiver that applies to PAGA claims should be severed.").    Above, the Court

12   recommended the representative action be severed as unenforceable.  See Martinez, 2019 WL

13   7290492, at *12 (severing the PAGA waiver section as unenforceable despite finding not

14   unconscionable and fact plaintiff did not bring any PAGA claims).

15          The Court recommends Plaintiff's request to find the class action waiver to be

16   unenforceable and severed should be denied for the reasons discussed throughout this opinion.

17   However, the Court also finds that the PAGA/representative action waiver can be severed as

18   unenforceable.  The Court recommends that the remainder of Plaintiff's requests for reformation

19   be denied.

20          **G.    The Court Recommends Granting Defendants' Motion to Strike**

21          Defendants submit that courts should generally strike class allegations when it is evident

22   that such allegations are improper, Fed. R. Civ. P. 12 (f) ("The court may strike from a pleading

23   an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter");

24   Eshagh v. Terminix Int'l Co., L.P., No. 1:11CV0222 LJO DLB, 2012 WL 12874468, at *1 (E.D.

25   Cal. July 6, 2012) ("Adopting recommendations to grant Defendants' motion to compel

26   arbitration, grant Defendants' motion to strike class allegations, and dismiss action without

27   prejudice."), aff'd, 588 F. App'x 703 (9th Cir. 2014) ("Finally, the district court did not err in

28   striking Eshagh's class claims.").  Thus, Defendants argue that because Plaintiff agreed to the

1   class action waiver provision, Plaintiff waived any purported ability to bring claims on behalf of

2   others, and thus the class allegations are improper and should be stricken.  (Mot. 13.)

3          The Court found the Agreement to be valid and enforceable, found the Agreement covers

4   the employment disputes underlying this action, and finds the Agreement intended to make

5   individual arbitration the exclusive manner of resolving such disputes and waived Plaintiff's

6   ability to bring a class action.  Accordingly, the Court recommends Plaintiff's class allegations

7   be stricken.  See Hartranft v. Encore Cap. Grp., Inc., No. 318CV01187BENRBB, 2021 WL

8   2473951, at *20 (S.D. Cal. June 16, 2021) ("Numerous cases have either

9   granted motions to strike class allegations or denied such motions as moot where the Court has

10  granted a motion to compel arbitration."); Salberg v. Massage Green Int'l Franchise Corp., No.

11  315CV02805GPCWVG, 2016 WL 3667154, at *3 (S.D. Cal. July 11, 2016) ("Agreement

12  encompasses all of Plaintiff's claims of unpaid wages and overtime, which are directly related to

13  Plaintiff's employment . . . the Court finds that the clear language of the Agreement expressly

14  forbids class certification in arbitration and requires that any issues relating to Plaintiff's

15  employment     be      decided      by      individual     arbitration    [and     grants]

16  unopposed motion to compel individual arbitration and strike Plaintiff's class claims.");  Eshagh,

17  2012 WL 12874468, at *1.[4]

18         Alternatively, the Court may deny the motion to strike as moot, if so inclined.  See

19  Hartranft, 2021 WL 2473951, at *20 ("Although this case was filed as a putative class action,

20  Plaintiff did not seek class certification, and as such, the Court did not certify the class . . . with

21  no certified class claims having come into existence, any dismissal would not affect putative

22  class members' claims . . . [t]he only claims currently alive in this case are Plaintiff's individual

23

24  [4]  Some courts decline to strike where the question of arbitrability is left to the arbitrator.  See Torres v. Secure
    Comm'n Sys., Inc., No. SACV2000980JVSJDEX, 2020 WL 6162156, at *4 (C.D. Cal. July 25, 2020)

25  ("Defendants argue that pursuant to the Class Action Waiver, the Court should compel Torres to arbitrate her claims
    individually and strike her class claims from the FAC[.]  However, it is not yet clear whether the arbitrator will

26  determine that Torres's claims are subject to arbitration pursuant to the Arbitration Agreement.  Therefore, the Court
    finds these issues premature and DENIES as moot the motion to strike.").  Here the Agreement provides that a court

27  is to resolve issues relating to the interpretation, validity and enforceability of the Agreement, and finds no clear and
    unmistakable statement that the question is for the arbitrator.  See Id. at *3 (question of arbitrability, is an issue for

28  judicial    determination    unless    the    parties    clearly    and    unmistakably    provide    otherwise)    (citing
    AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)).

1  claims  [and  thus],  the  Court **DENIES** Defendant's Motion to Strike the Class Allegations  as
2  moot.").

3       H.      **The Court Recommends Granting Defendants' Motion to Dismiss**

4       Defendants also submit the action should be dismissed because the only claims that
5  Plaintiff may properly maintain, must proceed in arbitration on an individual basis.

6       Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending
7  arbitration of those claims 'in accordance with the terms of the agreement' " Concepcion, 563
8  U.S. at 344.  If the court "determines that all of the claims raised in the action are subject to
9  arbitration, the court may either stay the action or dismiss it outright."  Whitworth v. SolarCity
10 Corp., 336 F. Supp. 3d 1119, 1130 (N.D. Cal. 2018) (quoting Johnmohammadi v.
11 Bloomingdale's Inc., 755 F.3d 1072, 1074 (9th Cir. 2014) (internal citations omitted); see also
12 Calzadillas, 2019 WL 5448308, at *4 ("Here, because all of plaintiffs' claims are subject to
13 arbitration, the court concludes that dismissal is appropriate."); Carrera Chapple v. Ancestry.com
14 Operations Inc., No. 20CV1456-LAB (DEB), 2020 WL 5847552, at *1 (S.D. Cal. Sept. 30,
15 2020) ("This case therefore cannot be maintained as a class action.  Where, as here, all claims are
16 subject to an arbitration agreement, the Court may dismiss the action."); Hernandez v. San
17 Gabriel Temp. Staffing Servs., LLC, No. 17-CV-05847-LHK, 2018 WL 1582914, at *3 (N.D.
18 Cal. Apr. 2, 2018) ("If all claims in litigation are subject to a valid arbitration agreement, the
19 court may dismiss or stay the case."); Hoekman v. Tamko Bldg. Prod., Inc., No.
20 214CV01581TLNKJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015) (where a court
21 "determines that an arbitration clause is enforceable, it has the discretion to either stay the case
22 pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration.")
23 (quoting Delgadillo v. James McKaone Enters., Inc., No. 1:12–cv–1149, 2012 WL 4027019, at
24 *3 (E.D.Cal. Sept. 12, 2012.)); Morgan v. Xerox Corp., No. 2:13-CV-00409-TLN-AC, 2013 WL
25 2151656, at *6 (E.D. Cal. May 16, 2013) (dismissing action with prejudice when sole claim was
26 subject to arbitration).

27      Here, this case cannot be maintained as a class action, and all claims raised in the
28 complaint are required to be submitted to individual arbitration pursuant to the Agreement.

47

1   Accordingly, the Court recommends the Defendants' motion to dismiss be granted and this

2   action be dismissed.

3   **I.      The Parties' Supplemental Briefing on AB 51 and <u>Chamber of Commerce</u>**
       **Does Not Change the Court's Findings and Recommendations**

4

5          After this matter was referred for the preparation of findings and recommendations, the

6   Court ordered supplemental briefing to address a recent decision from the Ninth Circuit, and

7   other developments in the law since the motion was filed that the parties wished to address.

8   (ECF No. 28.)

9          On October 10, 2019, California Assembly Bill 51 ("AB 51") was signed into law.

10  <u>Chamber of Com. of United States v. Bonta</u>, 13 F.4th 766, 771 (9th Cir. 2021).  AB 51 added §

11  432.6 to the California Labor Code.  Section (a) of § 432.6 provides: (a) A person shall not, as a

12  condition of employment, continued employment, or the receipt of any employment-related

13  benefit, require any applicant for employment or any employee to waive any right, forum, or

14  procedure for a violation of any provision of the California Fair Employment and Housing Act

15  (Part 2.8 (commencing with Section 12900) of Division 3 of Title 2 of the Government Code) or

16  this code, including the right to file and pursue a civil action or a complaint with, or otherwise

17  notify, any state agency, other public prosecutor, law enforcement agency, or any court or other

18  governmental entity of any alleged violation."  Cal. Lab. Code § 432.6(a).  Section (c) provides

19  that "[f]or purposes of this section, an agreement that requires an employee to opt out of a waiver

20  or take any affirmative action to preserve their rights is deemed a condition of employment."

21  Cal. Lab. Code § 432.6(c).

22         The law was slated to take effect on January 1, 2020, but a consortium of employer

23  groups filed suit in December 2019 in this Court, seeking a declaration that the law was invalid

24  with respect to arbitration agreements governed by the FAA.  The Court agreed and preliminarily

25  enjoined enforcement of Section 432.6 based on findings that it placed agreements to arbitrate on

26  unequal footing with other contracts, obstructed the purposes and objectives of the FAA, and was

27  thus preempted by the FAA.  <u>Chamber of Com. of United States v. Becerra</u>, 438 F. Supp. 3d

28  1078, 1097–100, 1108 (E.D. Cal. 2020).

1    On appeal, the Ninth Circuit held the FAA does not preempt Section 432.6 to the extent it

2 seeks to regulate employer conduct prior to executing an arbitration agreement, but it does

3 preempt Section 432.6 to the extent the law imposes civil or criminal penalties on employers

4 who obtained executed arbitration agreements governed by the FAA.  Chamber of Commerce,

5 13 F.4th at 780 ("The regulation of pre-agreement employer behavior in § 432.6 does not run

6 afoul of the FAA, but the civil and criminal sanctions attached to a violation of that section do.").

7 The majority held that Section 432.6 does not conflict with the FAA because it "does not make

8 invalid or unenforceable any agreement to arbitration, even if such agreement is consummated in

9 violation of the statute."  Id. at 776 ("Placing a pre-agreement condition on the waiver of 'any

10 right, forum, or procedure' does not undermine the validity or enforceability of an arbitration

11 agreement—its effects are aimed entirely at conduct that takes place prior to the existence of any

12 such agreement.").

13    Here, because the Agreement was signed on October 6, 2019, the law would seemingly

14 not be applicable based on the facts established before the Court for purposes of this motion.  See

15 Cal. Lab Code § 432.6(h); Orozco v. Gruma Corp., No. 120CV01293DADEPG, 2021 WL

16 4847014, at *3 (E.D. Cal. Oct. 18, 2021) ("First, plaintiff fails to provide any basis for

17 applying § 432.6 to her claims, which are subject to an arbitration agreement that she signed in

18 2016 and which are based on defendant's allegedly wrongful termination of her employment in

19 2018.").  More importantly, "§ 432.6 cannot be used to invalidate, revoke, or fail to enforce an

20 arbitration agreement."  Chamber of Commerce, 13 F.4th at 776.

21    There is merit to the Plaintiff's argument that the law could apply to the Agreement if

22 modified after January 1, 2020, and it is conceivable that putative class members may have

23 modified their employment agreements after such date.  See Cal. Lab Code § 432.6(h); Midwest

24 Motor Supply Co. v. Superior Ct. of Contra Costa Cty., 56 Cal. App. 5th 702, 716 (2020)

25 ("[B]ecause these modifications occurred on or after January 1, 2017, they triggered Finch's

26 right under section 925 to void the forum-selection clause in the employment agreement.").

27 Plaintiff contends that Chamber of Commerce and Harper do not address or involve the issues of

28 arbitration agreements modified or extended after January 1, 2020, or the viability of the class

1   claims when class members may properly invoke § 432.6.   Plaintiff submits <u>Chamber of</u>

2   <u>Commerce</u> and <u>Harper</u> only support the uncontroversial proposition that an arbitration agreement

3   does not implicate § 432.6 if the following conditions are met: (i) the arbitration agreement was

4   entered into before January 1, 2020; (ii) the arbitration agreement or employment contract was

5   not modified or extended on or after January 1, 2020; (iii) and validity and enforceability of the

6   arbitration agreement is demonstrated and/or not challenged outside of § 432.6 itself.   (Pl.'s

7   Suppl. Br. ("Pl. Suppl.") 7, ECF No. 31.)   "Indeed, had the instant arbitration agreement been

8   signed a few months later, there is little doubt *Chamber of Commerce* and Labor Code § 432.6

9   would have been dispositive – *i.e*., Defendant's pre-agreement misconduct would not have just

10   been the basis for procedural unconscionability, but would on its own render the agreement

11   plainly unenforceable.   In this way, *Chamber of Commerce* and Labor Code § 432.6 confirm that

12   a forced arbitration agreement entered into as a condition of employment – like the Purported

13   Arbitration Agreement should be unenforceable."   (Pl. Suppl. 9.)

14         Plaintiff's argument that there is a potentiality that the agreement was modified and thus

15   would make the Agreement subject to Section 432.6 would not change the Court's

16   recommendations, as even if the law were applicable, it would not make the Agreement

17   unenforceable.   The cases cited by Plaintiff do not demonstrate, and Plaintiff does not

18   sufficiently demonstrate, that even if the law were applicable, that it would have any impact on

19   the motion given the Court's analysis in the preceding sections.   Such finding is consistent with

20   the Ninth Circuit's decision, and a recent decision from the Eastern District.   <u>See</u> <u>Chamber of</u>

21   <u>Commerce</u>, 13 F.4th at 776 ("As discussed, § 432.6 does not make invalid or unenforceable any

22   agreement to arbitrate, even if such agreement is consummated in violation of the statute [as the

23   law states] '[n]othing in this section is intended to invalidate a written arbitration agreement that

24   is otherwise enforceable under the Federal Arbitration Act.' ") (quoting Cal. Lab. Code §

25   432.6(f)); <u>Harper v. Charter Commc'ns, LLC</u>, No. 219CV00902WBSDMC, 2021 WL 4784417,

26   at *9 (E.D. Cal. Oct. 13, 2021) ("Per <u>Chamber of Commerce</u>'s clear language, however, whether

27   this requirement violated section 432.6 has no effect on the court's present decision to enforce

28   the Solution Channel Agreement.").   Given this, the Court rejects Plaintiff's argument that it is

1 | premature to make a determination whether Section 432.6 impacts this motion because the
2 | Agreement may have been modified after January 1, 2020.

3 | The Court further finds no need to grant Plaintiff's request to allow time for different
4 | named Plaintiff to enter into the action who may have an arbitration agreement that is temporally
5 | applicable to the new law, (Pl. Suppl. 7). See Sanford, 625 F.3d at 560–61 ("The Smiths contend
6 | that even if they cannot represent an EFTA class, the district court should have permitted a debit
7 | purchaser to intervene to represent the class . . . [h]owever, where . . . the original plaintiffs were
8 | never qualified to represent the class, a motion to intervene represents a back-door attempt to
9 | begin the action anew, and need not be granted.") (citations omitted).  There is presumably
10 | nothing restraining Plaintiff's counsel from locating an alternative claimant that has in fact
11 | modified their arbitration agreement after such date, and may attempt to present such direct
12 | arguments or claims to a court in a different action.

13 | Accordingly, the Court finds Chamber of Commerce and Labor Code Section 432.6 do
14 | not change the Court's analysis in the preceding sections, and does not change the Court's
15 | recommendations.

**IV.**

**CONCLUSION AND RECOMMENDATION**

18 | Based on the foregoing, IT IS HEREBY RECOMMENDED that:

19 | 1. Defendants' motion to compel arbitration be GRANTED;

20 | 2. The representative action waiver provision of the Agreement be severed as
21 | unenforceable and against public policy;

22 | 3. Defendants' motion to strike Plaintiff's class allegations be GRANTED;

23 | 4. Defendants' motion to dismiss be GRANTED; and

24 | 5. This case be dismissed without prejudice.

25 | This findings and recommendations is submitted to the district judge assigned to this
26 | action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen**
27 | **(14) days** of service of this recommendation, any party may file written objections to this
28 | findings and recommendations with the court and serve a copy on all parties.  Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 8, 2021**

UNITED STATES MAGISTRATE JUDGE